[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 11, 2006
THOMAS K. KAHN
CLERK

_____

No. 03-13639

_____

D.C. Docket No. 02-00257-CR-T-23-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALVIN SMITH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 11, 2006)

**ON REMAND FROM THE
SUPREME COURT OF THE UNITED STATES**

Before TJOFLAT, RONEY and HILL, Circuit Judges.

TJOFLAT, Circuit Judge:

This case is before us on remand from the Supreme Court with instructions

to reconsider our panel decision, 402 F.3d 1303 (11th Cir. 2005) (Smith I), in light

of Gonzalez v. Raich, 545 U.S. 1, 125 S. Ct. 2195, 162 L. Ed. 2d 1 (2005). United

States v. Smith, 125 S. Ct. 2938, 162 L. Ed. 2d 863 (2005) (mem.). Upon

reconsideration, we have determined that, as a result of Raich and our recent

decision in United States v. Maxwell, 446 F.3d 1210 (11th Cir. 2006) (Maxwell

II), we can no longer say that the failure to find 18 U.S.C. §§ 2251(a),

2252A(a)(5)(B) unconstitutional as applied to this case amounted to plain error.

Because we find no other reversible error, we affirm the defendant's convictions.

Part I lays out the facts of this case. Part II discusses the effect of Raich and

Maxwell II on our earlier decision. Part III analyzes claims raised by the

defendant that we did not address in that decision. Part IV briefly concludes.

I.

Alvin Smith was convicted of one count of producing child pornography in

violation of 18 U.S.C. § 2251(a)[1] and one count of possessing child pornography

---

[1] Section 2251(a) provides:
Any person who employs, uses, persuades, induces, entices, or coerces any minor
to engage in . . . any sexually explicit conduct for the purpose of producing any
visual depiction of such conduct, shall be punished . . . if such person knows or
has reason to know that such visual depiction will be transported in interstate or
foreign commerce or mailed, if that visual depiction was produced using materials
that have been mailed, shipped, or transported in interstate or foreign commerce
by any means, including by computer, or if such visual depiction has actually been
transported in interstate or foreign commerce or mailed.

in violation of 18 U.S.C. § 2252A(a)(5)(B),[2] and was sentenced to a total of 188

months in prison and 60 months of supervised release, a condition of which

required him to register with state agencies as a sex offender. The physical

evidence used against Smith was discovered pursuant to a search warrant executed

at Smith's mother's home in Tampa, Florida. At the time of the search, Smith was

incarcerated and the target of the investigation was his brother, who lived at the

residence and was suspected of involvement in drug trafficking. As such, the

focus of the warrant was drugs and drug paraphernalia. During the course of the

search, a narcotics dog alerted the police to a lockbox, which was subsequently

identified as Smith's. Upon opening the lockbox, the police discovered numerous

photographs (investigators later determined the exact number to be 1,768), many

sexually explicit, and a number of which appeared to be of "very, very young girls

having sex . . . with a male who [was later] identified as the defendant."

The photographs were referred to the department's sex crime unit where an

---

[2] Section 2252A(a)(5)(B) provides:
Any person who . . . knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer . . . shall be punished . . . .

3

officer confirmed that many of the pictures appeared to be of young girls.

Investigators eventually located a girl who appeared in several of the photographs.

From the dates on the photos it was determined that the girl was fourteen years old

at the time the pictures were taken.[3]  The girl confirmed that the photos were of

her and, from photographs of Smith, identified him as the photographer.

At Smith's trial, the girl testified that, in November 1999, Smith approached

her and her boyfriend and persuaded them to allow Smith to take pictures of her in

her underwear in exchange for monetary compensation.  After retrieving a camera

and film, Smith reserved a hotel room into which only he and the girl entered.

Smith convinced her to remove all of her clothes and proceeded to take sexually

suggestive pictures.  Smith directed many of the poses and physically spread her

genitalia himself for a particularly graphic shot.  When Smith was finished taking

pictures, he left the girl and her boyfriend with money and the hotel room.

During the trial, the Government introduced several pictures from the

lockbox, including the photographs of the victim (including a thumbnail print of

one roll of the photographs), sexually explicit and sexually suggestive

photographs of other females – some of whom appeared likely to be of age – in

---

[3] At trial, the Government introduced the girl's Mexican birth certificate to establish her age at the time of the photographs.

4

what appeared to be the same hotel room, and photographs of Smith alone.[4] Additionally, the Government offered testimony of several of the officers involved in the search and subsequent investigation, as well as a recording of a phone conversation between Smith and his mother, Lucille, that took place while Smith was incarcerated in June 2002, regarding the pictures in the lockbox.

Finally, the Government introduced evidence to satisfy the jurisdictional elements of the statutes. The Government did not attempt to demonstrate that the images either traveled in interstate commerce themselves or were produced with the intent that they would travel in interstate commerce. Rather, by providing evidence that some of the photographs were printed on Kodak paper that the developer in Florida received from New York and that some of the pictures were processed using equipment received from California and manufactured in Japan, the Government's intention was to establish that the photographs were "produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce." 18 U.S.C. § 2251(a); see also id. § 2252A(a)(5)(B).

At the close of the Government's case, the defense moved for judgment of acquittal under Federal Rule of Criminal Procedure 29. The defense argued that,

---

[4] The Government also introduced Smith's inmate discharge identification card found in the lockbox.

5

as to the possession count, there was insufficient evidence to prove that Smith knew the girl was younger than eighteen years old; as to both counts, there was insufficient evidence to establish the jurisdictional elements. The court denied the motion and sent the case to the jury. The jury convicted Smith on both counts, specifically finding that the pornographic photographs were produced using film, photo paper, and equipment that had traveled in interstate or foreign commerce.

Smith appeals his convictions raising several arguments for the reversal of his convictions and the vacation of his sentences. We begin in part II with his claim that the statutes under which he was convicted were unconstitutional applications of Congress's Commerce Clause authority as applied to his conduct.

## II.

Smith contends that both 18 U.S.C. § 2252A(a)(5)(B) and 18 U.S.C. § 2251(a) are unconstitutional exercises of Congress's Commerce Clause authority as applied to his conduct.[5] In Smith I, we upheld Smith's claims and reversed his convictions. It is these holdings that the Supreme Court returned to us for reconsideration in light Gonzalez v. Raich, 545 U.S. 1, 125 S. Ct. 2195, 162 L. Ed. 2d 1 (2005).

---

[5] Congress may "regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3.

In our previous decision, we noted that, because Smith had not challenged the constitutionality of the statutes at trial, such a contention would only be reviewed for plain error. "Under the plain error standard, before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Williams, 445 F.3d 1302, 1308 (11th Cir. 2006). We again review Smith's claim for plain error. In doing so, we are mindful that, just as in Smith I, "[t]he error must be 'plain' at the time of appellate consideration." 402 F.3d at 1315. That is, the error must be plain now, in light of recent Supreme Court and Eleventh Circuit developments.

As we stated in our prior opinion, the Supreme Court has delineated three categories of activity that Congress may constitutionally regulate pursuant to its Commerce Clause authority:

> First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect

7

interstate commerce.

Smith I, 402 F.3d at 1316 (quoting United States v. Lopez, 514 U.S. 549, 558-59, 115 S. Ct. 1624, 1629-30, 131 L. Ed. 2d 626 (1995)) (internal quotation marks omitted). The question we addressed in Smith I – and reconsider here – was whether either statute, as applied to Smith's case, could be said to be regulating conduct that "substantially affect[s] interstate commerce." Id.

As to this issue, our prior opinion stated that "the law at the time of Smith's trial was 'unclear' rather than 'settled and clearly contrary to' him." Smith I, 402 F.3d at 1315 n.7 (quoting Johnson v. United States, 520 U.S. 461, 468, 117 S. Ct. 1544, 1549, 137 L. Ed. 2d 718 (1997)). We ultimately determined, however, that, at the time of appeal, it was settled that Smith's conduct could not be said to affect substantially, at least in the constitutional sense, interstate commerce. Accordingly, we held that Congress's regulation of Smith's production and possession of child pornography was beyond the scope of its Commerce Clause authority.

In arriving at this conclusion, we relied primarily on this court's earlier decision in United States v. Maxwell, 386 F.3d 1042 (11th Cir. 2004) (Maxwell I), where we concluded that "purely intrastate possession of child pornography was not converted 'into an activity subject to Commerce Clause regulation' simply

8

because 'the disks on which the pornography was ultimately copied traveled, when blank, to Florida from someplace outside of Florida.'" Smith I, 402 F.3d at 1309 (quoting Maxwell I, 386 F.3d at 1068). Discerning nothing to distinguish constitutionally Smith's case from Maxwell's, we found constitutional error. See id. at 1316-23.[6] Believing this conclusion to be inescapable based on Maxwell I's holding and reasoning, we found this error plain. See id. at 1323-25.

Our conclusion that the constitutional error was plain was explicitly reliant on Maxwell I. Framing our task under plain error review in a context where the law was not settled at the time of trial, but is settled at the time of appeal, we noted that the relevant question we must answer is: "If Smith's prosecution were initiated today, would his conduct be so obviously beyond the power of Congress to proscribe that the district court should raise the issue sua sponte even absent a timely objection?" Smith I, 402 F.3d at 1323 (internal quotation marks omitted). We concluded that, "[i]n light of Maxwell, we answer this question in the affirmative." Id. We later made this reliance even more clear: "[T]he error is

_____

[6] Maxwell dealt only with 18 U.S.C. § 2251A(a)(5)(B). Although Maxwell I invalidated the statute as applied, we spent little time discussing Smith's possession charge as the argument in favor of Congressional authority was nearly identical to that in Maxwell. Smith I, 402 F.3d at 1316-17 ("Because there is no significant difference between Smith's possession and Maxwell's possession, our analysis will focus on Smith's intrastate, noncommercial production of child pornography."). The bulk of our discussion dealt with the applicability of Maxwell's reasoning to the production charge.

9

plain only if Maxwell itself made it so." Id.

The Supreme Court vacated our decision in Maxwell I, see United States v. Maxwell, __U.S. __, 126 S. Ct. 321, 163 L. Ed. 2d 29 (2005) (mem.), along with our decision in this case, for reconsideration in light of the Court's most recent Commerce Clause opinion in Raich, 545 U.S. 1, 125 S. Ct. 2195, 162 L. Ed. 2d 1 (2005). Raich upheld against constitutional attack the application of the Controlled Substances Act (CSA), 21 U.S.C. § 801 et seq., to the wholly intrastate cultivation and use of marijuana for medicinal purposes. See id. The Court's opinion was based primarily on the premise that Congress may regulate purely intrastate activity, whether economic or not, that could be rationally considered incident to Congress's comprehensive regulation of interstate economic activity. See id. at 2205-15; id. at 2205 ("Our case law firmly establishes Congress' power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce."); id. at 2206 ("Congress can regulate purely intrastate activity that is not itself 'commercial,' . . . if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity."). In revisiting Maxwell I, we determined that Raich called into question much of our earlier analysis and ultimately upheld the constitutionality of 18 U.S.C. § 2252A(a)(5)(B). See Maxwell II, 446 F.3d at

10

1216-19; id. at 1216 ("We find very little to distinguish constitutionally Maxwell's claim from Raich's. Indeed, much of the Court's analysis could serve as an opinion in this case by simply replacing marijuana and the CSA with child pornography and the [Child Pornography Prevention Act of 1996]." (footnote omitted)); id. at 1219 ("[W]e hold that 18 U.S.C. § 2252A is a valid exercise of Congress's authority pursuant to the Necessary and Proper Clause to effectuate Congress's power to regulate commerce among the several states.").[7]

In light of Raich and Maxwell II, Smith's claim of plain error fails at step one. Without Maxwell I, Smith cannot establish that any error would be plain. Indeed, after Raich and Maxwell II, Smith cannot establish that the application of § 2251(a) or § 2252A(a)(5)(B) to his conduct was error at all.

We rather easily conclude that the application of § 2251(a) to Smith's intrastate production of child pornography is within Congress's constitutional authority.[8] Section 2251(a) "is part of a comprehensive regulatory scheme criminalizing the receipt, distribution, sale, production, possession, solicitation

---

[7] We expressly deferred consideration of whether the current Commerce Clause framework leaves room for as applied challenges to facially constitutional statutes. See Maxwell II, 446 F.3d at 1215 n.5.

[8] Because Maxwell II dealt with the possession of child pornography and we discern nothing to distinguish Smith's possession from Maxwell's, we have no trouble finding the application of § 2252A(a)(5)(B) to Smith's conduct to be constitutionally sound. We therefore only focus on the production charge.

11

and advertisement of child pornography." Maxwell II, 446 F.3d at 1216-17.

As such, we need only determine "whether Congress could rationally conclude

that the cumulative effect of the conduct by [Smith] and his ilk would substantially

affect interstate commerce." Id. at 1218. This is because, "where Congress has

attempted to regulate (or eliminate) an interstate market, Raich grants Congress

substantial leeway to regulate purely intrastate activity (whether economic or not)

that it deems to have the capability, in the aggregate, of frustrating the broader

regulation of interstate economic activity." Id. at 1215.[9]

Just as in Maxwell II,

> there is nothing irrational about Congress's conclusion, supported by
> its findings, that pornography begets pornography, regardless of its
> origin. Nor is it irrational for Congress to conclude that its inability
> to regulate the intrastate incidence of child pornography would
> undermine its broader regulatory scheme designed to eliminate the
> market in its entirety, or that "the enforcement difficulties that attend
> distinguishing between [purely intrastate and interstate child
> pornography]," would frustrate Congress's interest in completely
> eliminating the interstate market. It is well within Congress's
> authority to regulate directly the commercial activities constituting

---

[9] In Smith I, we determined that aggregation was not appropriate because his conduct was "noneconomic, purely intrastate activity." 402 F.3d at 1322. Raich left some confusion as to whether Smith's conduct could be considered "economic." On the one had, the Supreme Court defined "economics" as "the production, distribution, and consumption of commodities." 125 S. Ct. at 2211 (quoting Webster's Third New International Dictionary 720 (1966)). On the other, it grouped together the intrastate manufacture and possession of an article of commerce as conduct Congress could rationally regulate as a means of regulating commerce in that product. Id. We need not dwell long on this question, as Raich made the economic/non-economic distinction irrelevant for aggregation purposes.

12

the interstate market for child pornography, and "[p]rohibiting the intrastate possession or manufacture of an article of commerce is a rational . . . means of regulating commerce in that product."

Id. at 1218 (citations omitted) (quoting Raich, 125 S. Ct. at 2209; id. at 2211).

Because, for Commerce Clause purposes, there is nothing that distinguishes Smith's intrastate production from his possession, we believe that Maxwell II dictates the result in this case. Congress could have rationally concluded that the inability to regulate intrastate possession and production of child pornography would, in the aggregate, undermine Congress's regulation of the interstate child pornography market. We therefore find no constitutional error in the application of either §§ 2251(a) and 2252A(a)(5)(B) to Smith's conduct.

III.

In our prior opinion we had no occasion to reach Smith's other claims of error. Because we now reverse our prior determination and hold that there was no plain error in constitutionally applying § 2251 and § 2252A to Smith's conduct, we must address Smith's additional claims.

Smith seeks one of three forms of relief. He argues first that there was insufficient evidence for his convictions and therefore he should be acquitted. He alternatively requests a new trial based on several claims of evidentiary and jury instruction error. Finally, he asks that we set aside his sentences and order a new

sentencing hearing after he is advised of the mandatory sentencing ranges and conditions of supervised release. We address the sufficiency of the evidence at the outset, as a finding of insufficient evidence would obviate any need to consider the alleged trial errors. See Burks v. United States, 437 U.S. 1, 18, 98 S. Ct. 2141, 2150-51, 57 L. Ed. 2d 1 (1978) ("Since we hold today that the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient, the only . . . remedy available for that court is the direction of a judgment of acquittal.");[10] United States v. Bobo, 419 F.3d 1264, 1268 (11th Cir. 2005) (noting this court's prudential rule "that requires the court to review sufficiency of the evidence claims raised by defendants, even if resolution on alternative grounds would otherwise dispose of the case" and collecting cases).

## A. Sufficiency of the Evidence

[10] We note that, as far as Double Jeopardy concerns are implicated, we review the sufficiency of all the evidence admitted at trial – admissible or inadmissible. See Lockhart v. Nelson, 488 U.S. 33, 40-41, 109 S. Ct. 285, 291, 102 L. Ed. 2d 265 (1988) ("It is quite clear from our opinion in Burks that a reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause . . . ."). Because we find no evidentiary errors, we need not concern ourselves with whether an appellate court should disregard inadmissible evidence in determining sufficiency. Compare United States v. Khoury, 901 F.2d 948, 961 (11th Cir.1990) ("Although we are reversing Kluver's conviction because of harmful constitutional error, nonetheless we must still rule on Kluver's sufficiency argument because if the properly admitted evidence presented by the government was insufficient to carry the burden of proof, then Kluver's retrial would be prohibited by the double jeopardy bar.") with Lockhart, 488 U.S. at 40-41, 109 S. Ct. at 291; United States v. Yates, 438 F.3d 1307, 1319 n.13 (11th Cir. 2006) (en banc) (noting that, in passing on a sufficiency of the evidence challenge, the "usual rule" is to consider all evidence admitted at trial, even unconstitutionally admitted evidence).

14

## 1. Arguments Made at Trial

At the close of the Government's case, Smith moved pursuant to Federal Rule of Criminal Procedure 29 for a judgment of acquittal, claiming insufficient evidence to prove the interstate nexus with regards to both 18 U.S.C. § 2251(a) and § 2252A(a)(5)(B) and insufficient evidence to prove that he "knowingly" possessed child pornography in violation of § 2252A(a)(5)(B).  The district court denied his motion.  Of these arguments, Smith only claims on appeal that the evidence was insufficient to prove that he knew the victim was a child.  We review a district court's denial of a motion for judgment of acquittal based on sufficiency of the evidence de novo.  United States v. Dulcio, 441 F.3d 1269, 1276 (11th Cir. 2006).  "In determining whether the government produced sufficient evidence, we must review the evidence in the light most favorable to the government and draw all reasonable factual inferences in favor of the jury's verdict."  Id.  We need only determine that a reasonable fact-finder could have determined that the evidence proved the defendant's guilt beyond a reasonable doubt.  United States v. Peters, 403 F.3d 1263, 1268 (11th Cir. 2005).

Because Smith did not testify at trial, any evidence regarding his knowledge of the victim's age must necessarily be circumstantial.  The evidence presented by the Government included the following: (1) the testimony of Officer Mayo – one

15

of the officers who executed the search warrant and who had no specific training regarding sex crimes or child exploitation – who described the females in the photographs as "very, very young girls;" (2) the testimony of Detective Dickie, a sex crimes/sex abuse investigator with sixteen years of related experience, who testified that some of the photographs were of females under eighteen and whose follow-up investigation of such photographs led her to the victim; and (3) the actual photographs of the victim. Given this evidence, and the reasonable inferences that could be drawn therefrom, a reasonable juror could find beyond a reasonable doubt that the victim was so obviously a minor that the defendant must have known as much. We therefore affirm the district court's denial of the defendant's motion for judgment of acquittal.

2. Plain Error – "Knowingly" and the Interstate Nexus

On appeal, Smith argues that (1) in order to be convicted under either 18 U.S.C. § 2251(a) or § 2252A, the prosecution was required to prove – either as a matter of statutory interpretation or constitutionally – that he knew the interstate nexus was satisfied, and (2) there was insufficient evidence to prove his knowledge of the nexus beyond a reasonable doubt. As that requirement pertains to this case, Smith submits that the prosecution had the obligation to prove that he knew that the photographs were "produced using materials that have been mailed,

16

shipped, or transported in interstate or foreign commerce by any means, including by computer." 18 U.S.C § 2251(a); see also id. § 2252A(a)(5)(B). In this regard, he relies entirely on United States v. X-Citement Video, Inc., 513 U.S. 64, 115 S. Ct. 464, 130 L. Ed. 2d 372 (1994). Because Smith did not raise this issue at the district court, we view this claim for plain error.

X-Citement video dealt with the knowledge requirement of 18 U.S.C. § 2252(a)(1), (2). We begin with two observations about X-Citement Video: First, the Court did not suggest that the "knowingly" term extended to the jurisdictional terms of the statute. Id. at 78, 115 S. Ct. at 472 ("[W]e conclude that the term 'knowingly' in § 2252 extends both to the sexually explicit nature of the material and to the age of the performers."). Second, we note that X-Citement Video was not a constitutional holding. The Court interpreted the statute itself, and in concluding that "knowingly" applied to the nature and age provision, noted that, in light of First Amendment precedent, "a statute completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts." Id. But see id. at 83-85, 115 S. Ct. at 474-75 (Scalia, J., dissenting). The conclusion, however, was one of statutory interpretation. Thus, X-Citement Video guides our analysis only to the extent it aids our interpretation of 18 U.S.C. § 2251(a) and § 2252A(a)(5)(B).

## a. 18 U.S.C. § 2252A(a)(5)(B)

As previously noted, 18 U.S.C. § 2252A(a)(5)(B) provides, in relevant part:

> Any person who . . . knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer . . . shall be punished . . .

It would not be an implausible interpretation of the statute to extend the term "knowingly" to the jurisdictional elements. It is not, however, an inevitable interpretation, and we are unaware of any court that has previously adopted it. Cf. United States v. Thrasher, 569 F.2d 894, 895 (5th Cir. 1978) ("The law is well settled . . . that the government is not required to prove knowledge of the interstate nexus of the firearm" in 18 U.S.C. § 922(h)(1).);[11] United States v. Miller, 105 F.3d 552, 555 (9th Cir. 1997) ("We agree with the decisions from other circuits that the § 924(a) knowledge requirement applies only to the possession element of § 922(g)(1), not to the interstate nexus or to felon status.");[12] United States v.

---

[11] In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[12] 18 U.S.C. § 924(a)(1)(B) states that anyone who "knowingly violates subsection (a)(4), (f), (k), or (q) of section 922" shall be punished according to the statute's stated terms. 18 U.S.C. § 922(g) makes it unlawful for certain specified persons "to ship or transport in interstate or

18

Darby, 37 F.3d 1059, 1067 (4th Cir. 1994) (noting that "[n]umerous cases have held that criminal statutes based on the government's interest in regulating interstate commerce do not generally require that an offender have knowledge of the interstate nexus of his actions," and collecting cases). Nor have we found anything in the legislative history of the statute that would suggest – plainly or otherwise – that Congress only intended to reach possessors of child pornography who knew that the materials on or by which their pornography was produced had traveled in interstate commerce. Moreover, the presumption in X-Citement Video, which guided the Court to its conclusion, that "a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct," X-Citement Video, 513 U.S. at 72, 115 S. Ct. at 469, does not apply in this case. Given the background of state criminal regulation of child pornography, possession of child pornography that has not traveled in interstate commerce cannot be said to be "innocent conduct." Accordingly, we cannot conclude that the failure to interpret the term "knowingly" to extend to the interstate nexus was plain error.

Similarly, any argument that knowledge of the interstate nexus is

foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

19

constitutionally required cannot stand plain error analysis. As previously noted, X-Citement Video does not even stand for the proposition that knowledge of the age of the performers is constitutionally required, let alone knowledge of the interstate nexus. To the extent the First Amendment does require knowledge of age, moreover, it is because material that would be constitutionally protected when the performers are adults is not necessarily constitutionally protected when involving children. See Ashcroft v. Free Speech Coalition, 535 U.S. 234, 240, 122 S. Ct. 1389, 1396, 152 L. Ed. 2d 403 (2002) ("As a general rule, pornography can be banned only if obscene, but under [New York v. Ferber, 458 U.S. 747, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982),] pornography showing minors can be proscribed whether or not the images are obscene under the definition set forth in Miller v. California, 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973)."). Thus, the argument goes, knowledge of age is required for prosecution so as not to deter constitutionally protected speech. This analysis does not carry over to the interstate nexus. The line of limitation the Commerce Clause imposes upon Congressional authority (or that Congress imposes upon itself) is not a line that distinguishes constitutionally protected from unprotected conduct. Because there is no First Amendment right to possess child pornography (wholly intrastate or otherwise), a state's ability to proscribe child pornography is not dependant upon

20

Congress's ability or choice to do the same. There is no parallel concern, therefore, of over-deterring constitutionally protected speech. As such, Smith's argument that the prosecution was constitutionally required to prove knowledge of the interstate nexus cannot withstand plain error analysis, and we therefore have no need to assess whether sufficient evidence was offered so to prove.

### b. 18 U.S.C. § 2251(a)

The argument with respect to 18 U.S.C. § 2251(a) is more easily disposed of. The text of the statute simply does not provide a basis to conclude that knowledge of the jurisdictional nexus is plainly required. Section 2251(a) reaches an individual's conduct

> if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a). The most natural reading of this provision is that jurisdiction extends to child pornography (1) produced with the intent that it eventually travel in interstate commerce; (2) produced with materials that have traveled in interstate commerce; or (3) that has traveled in interstate commerce. Only the first basis for jurisdiction requires any proof of mental state. We cannot conclude, therefore,

21

that the district court committed plain error by not requiring knowledge of the interstate nexus. Moreover, for the reasons discussed with regard to 18 U.S.C. § 2252A(a)(5)(B), supra, we cannot say that not having such a requirement constitutes plain constitutional error. As a result, all of Smith's claims for acquittal fail,[13] and we move on to his claims of trial and sentencing error.

## B. Improper Search and Seizure

Smith argues that the photographs in question were seized pursuant to an unconstitutional search without a warrant, and therefore should not have been admitted at trial. The district court determined that the plain view exception to the warrant requirement authorized the seizure. Review of a district court's denial of

---

[13] In his brief, Smith argues that, in order for his 18 U.S.C. § 2251(a) conviction to be constitutionally upheld, the Government also had to prove knowledge of the victim's age, and that it failed to do so. At argument on the Rule 29 motion, defense counsel expressly conceded that the statute on its face did not impose such a requirement, and made no constitutional objection: "[A]s to Count one . . . it is a strict liability crime, it doesn't matter if the government can prove that the photographer knew the age of the model . . . ." Record, vol. 12, no. 107, at 52. Thus, we would ordinarily review defendant's argument that proof of age is required for § 2251(a) for plain error. In this case, however, even if we were to agree with Smith's position, the jury found, and we have upheld, that Smith knew the victim was a minor for purposes of the § 2252A(a)(5)(B) conviction. Because any error would therefore necessarily be harmless, we need not address this claim. In arriving at this conclusion, we do not interpret Smith to be making a facial challenge to the statute, claiming overbreadth despite the constitutional application in his particular case. In that context, harmless error analysis would be inappropriate.

Smith also argues, for the first time on appeal, that there was insufficient evidence to prove that he was "producing" child pornography, because the evidence only demonstrated personal use, not distribution and sale. As discussed, see infra part III.E.2, we cannot find that it was plain error to interpret "producing" as not involving a profit motive. Smith's insufficiency of the evidence challenge therefore fails as well.

22

a motion to suppress is a mixed question of law and fact.  United States v. Holloway, 290 F.3d 1331, 1334 (11th Cir. 2002).  We review the district court's factual findings for clear error and construe those facts in the light most favorable to the prevailing party.  Id.  The application of law is reviewed de novo.  Id.  We agree with the district court that, because the search of the premises and lockbox was valid and the seizure was legitimately conducted pursuant to the plain view doctrine, Smith's Fourth Amendment rights were not violated and the photographs were lawfully admitted at trial.[14]

The "plain view" doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent.  Horton v. California,

---

[14]  "The gravamen of a Fourth Amendment claim is that the complainant's legitimate expectation of privacy has been violated by an illegal search or seizure."  Kimmelman v. Morrison, 477 U.S. 365, 374, 106 S. Ct. 2574, 2582, 91 L. Ed. 2d 305 (1986).  "The Supreme Court has enunciated a two-part test to determine whether an individual has a legitimate expectation of privacy in the object of a search: (1) the individual must manifest a subjective expectation of privacy in the object of the challenged search, and (2) society must be willing to recognize that expectation as legitimate."  United States v. Smith, 39 F.3d 1143, 1144 (11th Cir. 1994) (citing California v. Ciraolo, 476 U.S. 207, 211, 106 S. Ct. 1809, 1811, 90 L. Ed. 2d 210 (1986)). The district court, in adopting the magistrate judge's report and recommendation, determined that the search was lawful both because the defendant had not manifested a subjective expectation of privacy in the photographs and because the plain view doctrine authorized the search and seizure.  Because we agree that the plain view doctrine applies, we express no opinion on the alternate ground for upholding the search.

496 U.S. 128, 136-37, 110 S. Ct. 2301, 2308, 110 L. Ed. 2d 112 (1990); United States v. Hromada, 49 F.3d 685, 690 n.11 (11th Cir. 1995). "The plain view doctrine allows police officers to seize any contraband in plain view if the officers have a right of access to the place where the contraband is located." United States v. Rodgers, 924 F.2d 219, 221 (11th Cir. 1991). "An example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character." Horton, 496 U.S. at 135, 110 S. Ct. at 2307 (quoting Coolidge v. New Hampshire, 403 U.S. 443, 465, 91 S. Ct. 2022, 2037, 29 L. Ed. 2d 564 (1971) (opinion of Stewart, J.) (internal quotation marks omitted). The officers, however, must have probable cause to believe that the object in plain view is contraband. Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S. Ct. 2130, 2137, 124 L. Ed. 2d 334 (1993) ("If . . . the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object – i.e., if 'its incriminating character [is not] "immediately apparent,"' – the plain-view doctrine cannot justify its seizure." (second alteration in original) (citation omitted) (quoting Horton, 496 U.S. at 136, 110 S.Ct., at 2308 (quoting Coolidge, 403 U.S. at 466, 91 S. Ct. at 2038 (opinion of Stewart, J.)))).

Here, the officers were lawfully at the Smith residence pursuant to an unchallenged search warrant authorizing the officers to search for and seize evidence of illicit drug activity. The warrant specifically authorized the officers to seize "photographs that would be probative to establish residency." The officers, alerted to the lockbox by a narcotics dog, were justified in searching it for evidence of drugs – either because a lockbox could reasonably contain drugs or related paraphernalia, United States v. Wuagneux, 683 F.2d 1343, 1352 (11th Cir. 1982) ("[A] search may be as extensive as reasonably required to locate the items described in the warrant."), or because the narcotics canine alerted the officers to the lockbox, United States v. Banks, 3 F.3d 399, 402 (11th Cir. 1993) ("Our circuit has recognized that probable cause arises when a drug-trained canine alerts to drugs.") – or photographs, as authorized by the warrant. It was through the lawful execution of the warrant that the officers came across the photographs at issue here. The only remaining question, then, is whether it was immediately apparent to the officers – whether they had probably cause to believe – that among what they found in the lockbox, was evidence of child pornography.

"In dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. . . . 'The substance

25

of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.'" Brinegar v. United States, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, 93 L. Ed. 1879 (1949) (quoting Carroll v. United States, 267 U.S. 132, 161, 45 S. Ct. 280, 288, 69 L.Ed. 543 (1925) (quoting McCarthy v. Dearmit, 99 Pa. 63, 69 (1881) (internal quotation marks omitted))); see also United States v. $242,484.00, 389 F.3d 1149, 1160 (11th Cir. 2004) (en banc). "Although we must decide the legal issue of whether probable cause exists ourselves, we do give weight to the inferences that law enforcement agents draw from the facts . . . ." United States v. $242,484.00, 389 F.3d at 1162. Officer Mayo testified, and the district court found credible, that some of the girls in the photographs "looked extremely young, very very young." He thought it was "very obvious" that the girls were younger than eighteen. This testimony was confirmed by Detective Julie Dickie, a detective with extensive experience investigating sex crimes and child abuse. Detective Dickie testified that some of the females in the photos were clearly minors with one likely as young as eleven. Neither Officer Mayo nor Detective Dickie needed to have been correct in their assessment in order for probable cause to have existed. Nor must Officer Mayo have been a sex crimes expert – we are only concerned with what a "reasonable and prudent" officer might have perceived and inferred. That the district court believed that Officer Mayo saw photographs,

26

which he perceived obviously to contain sexually explicit images of very young girls, is sufficient to make out a "reasonable ground for belief of guilt."[15]

Smith makes several other arguments as to why it could not have been "immediately apparent" to the officers that the photos were evidence of a crime. First, he alleges that there was no evidence that the officers knew that Smith's conduct met the technical requirements of the statute (namely, that he "produc[ed]" the photographs as defined in 18 U.S.C. § 2256, that he had the necessary mens rea, and the photographs either traveled in interstate commerce or were made using materials that traveled in interstate commerce). As stated, probable cause is not based on knowledge of legal technicalities, but rather on whether there is a reasonable ground to believe that a crime has been committed. "There is no rule of law which requires an officer to know with absolute certainty that all elements of a putative crime have been completed when he seizes an article

---

[15] Smith argues that without viewing the photographs, the court was incapable of determining that it was "immediately apparent" that they were child pornography. Smith points to no authority, however, nor have we independently discovered any, suggesting that the court cannot rely on the testimony of witnesses, but must actually view any alleged contraband to determine if probable cause existed. Indeed, had the officers followed Smith's preferred course of action – securing a separate warrant after discovering the photographs – it is extremely unlikely that the magistrate judge would have observed the photographs prior to issuing the warrant. We are satisfied, moreover, that the magistrate judge relied upon the testimony of a sex crimes and child abuse expert in determining whether it could have been obvious to Officer Mayo that the photographs were of young girls. While it may have been prudent for the magistrate judge to view the photos independently, we cannot say that, as a matter of law, the court must view the evidence to determine whether probable cause existed.

which reasonably appears to be incriminating evidence." United States v. Slocum, 708 F.2d 587, 605 (11th Cir. 1983) (quoting United States v. Wood, 560 F.2d 660, 664 (5th Cir. 1977)) (internal quotation marks omitted); United States v. Herzbrun, 723 F.2d 773, 775 (11th Cir. 1984) ("[P]robable cause must not be judged with clinical detachment, but with a common sense view to the realities of normal life."). Officer Mayo could reasonably have believed that the sexually explicit photographs of what he observed to be very young girls were evidence of a crime – either state, see Fla. Stat. Ann. § 847.0137 (West 2006) (criminalizing transmission of child pornography as a third degree felony), or federal – without knowing whether the legal technicalities of those crimes had, in fact, been satisfied.

Second, Smith contends that because the officers did not look at each photo, it could not have been "immediately apparent" that the ones not viewed were evidence of a crime. Even if this were true, the argument would say nothing about whether it was immediately apparent that the photographs that the officers did actually view were properly seized. Regardless, this argument has been raised before and has been rejected by this court. See United States v. Blum, 753 F.2d 999, 1002 (11th Cir. 1985) ("The appellant argues that there is no way the agent could immediately have recognized a box full of miscellaneous papers as evidence

28

without going through the box and reading each item to determine its evidentiary importance. . . . Once the agents saw [some of the evidence, however,] the evidentiary value of these would be apparent."); United States v. Slocum, 708 F.2d 587, 606 (11th Cir. 1983) ("In these circumstances, to require a seizing officer to examine individually each document within a file or bound volume 'would substantially increase the time required to conduct the search, thereby aggravating the intrusiveness of the search.' Since the individual documents contained in the file could be legitimately seized under the plain view exception, [the officer] acted reasonably in ordering the seizure of the entire file." (citations omitted) (quoting United States v. Wuagneux, 683 F.2d 1343, 1353 (11th Cir. 1982) (quoting United States v. Beusch, 596 F.2d 871, 876 (9th Cir. 1979) (internal quotation marks omitted)))). Nor is it problematic that some of the pictures turned out to be of adult women – the scope of the "plain view" doctrine extends to the seizure of items that, while not contraband themselves, may be used as evidence against a defendant. See United States v. Ladson, 774 F.2d 436, 439 (11th Cir. 1985) (stating that, for the plain view exception to apply, "it must have been immediately apparent that the item was evidence, contraband or otherwise subject to seizure" (emphasis added)). Accordingly, Office Mayo did not need to know if all the photographs were of child pornography. For that matter, he did not need to know

29

that any were of child pornography.  Rather he had to have had probable cause to believe that among the photographs, some were illegal.  Having seen photos he reasonably believed to be child pornography, he had probable cause to presume, without going through each individually, that there were others among the group of photographs in the same lockbox that were either themselves child pornography or evidence thereof.

Finally, Smith relies on the fact that the testimony differed regarding the number of pictures seized – ranging from 200 to 500 at the suppression hearing to 1,768 at trial – and no accounting of what was seized, to challenge the officer's assertion that it was "immediately apparent" that the photographs were illicit.  In Smith's view, if the number of photos was not "immediately apparent," there is nothing about them that could reliably be considered immediately apparent.  We believe, however, that the discrepancy in testimony goes solely to the credibility of the witnesses – the (ir)reliability of whom does not necessarily extend from the number to the nature of the photographs.  Even if we could presume that the numerical discrepancy makes the officers' testimony with respect to the number of photographs inherently unreliable, we cannot presume that the court committed clear error in crediting the officers' testimony in finding that it was "immediately apparent" that some of the photos – however many there were – were child

30

pornography.

Because the officers could lawfully search the premises, the lockbox, and the photographs, and because the district court could reasonably find that it was "immediately apparent" to the officers that the photographs were evidence of a crime, their seizure was authorized by the plain view doctrine and they were lawfully admitted into evidence.

## C. Improper Out-of-Court Identification

Smith next claims that the victim's out-of-court identification, which was followed at trial by an in-court identification by the witness, should have been suppressed, because the identification procedure was impermissibly suggestive and created a substantial likelihood of misidentification thereby depriving Smith of his right to due process. The district court refused to suppress this evidence. The standard of review is the same as above: the facts are reviewed for clear error and the district court's application of the law to those facts are reviewed de novo.

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L. Ed. 2d 1247 (1968);

see also Jones v. Kemp, 794 F.2d 1536, 1539 (11th Cir. 1986) ("A pretrial identification and subsequent in-court identification may amount to a due process violation if the pretrial procedure was 'unnecessarily suggestive and conducive to irreparable mistaken identification.'" (quoting Stovall v. Denno, 388 U.S. 293, 302, 87 S. Ct. 1967, 1972, 18 L. Ed. 2d 1199, 1206 (1967))).  Smith, however, does not allege that the in-court identification was tainted by what he considers to be the impermissibly suggestive pretrial identification procedure.  See Record, vol. 9, no. 69 at 74-75.  Rather, we interpret Smith's argument to be that the identification resulting from the allegedly unconstitutional identification procedure impermissibly bolstered the unchallenged in-court identification and therefore should have been suppressed.  As a result, we need not concern ourselves with whether the alleged error was so great as to lead irreparably to a mistaken in-court identification.  See Neil v. Biggers, 409 U.S. 188, 198, 93 S. Ct. 375, 382, 34 L. Ed. 2d 401 (1972) ("While the phrase ['a very substantial likelihood of irreparable misidentification'] was coined as a standard for determining whether an in-court identification would be admissible in the wake of a suggestive out-of-court identification, with the deletion of 'irreparable' it serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself.").

32

Out-of-court identifications are examined for due process violations using a two-part test: "The court must first decide whether the [procedure] was impermissibly suggestive, and if it was suggestive the court must then determine whether the identification procedure created a substantial likelihood of misidentification." United States v. Russo, 796 F.2d 1443, 1452 (11th Cir. 1986). Smith contends that the identification procedure was impermissibly suggestive because, at the time of the pre-trial identification, the victim was in custody for a probation violation, and was shown several naked pictures of herself, the defendant, and other females. In this context, according to Smith, the victim, not knowing whether she had committed a crime, was likely to say whatever was necessary to avoid further trouble for herself. The district court disagreed with Smith's argument, and we cannot say that there was clear error in any of the court's factual findings that would lead to the conclusion that the procedure was impermissibly suggestive.

The district court found that the officers who showed the pictures to the victim only asked whether she was able to identify anyone in any of the pictures. The officers were hoping the victim could identify other girls in the photographs, not just Smith. As such, they never asked the victim if the photographer was in any of the pictures. The district court found that, while looking at the pictures, the

33

victim held up one and "spontaneously" identified Smith as the photographer.

Detective Dickie testified that the victim continued to look through pictures after

she had identified Smith and continued to single out Smith from among the

pictures as the man who had taken the photographs. Thus, given the totality of

circumstances, we cannot say that the fact that the victim was in custody at the

time of the identification necessarily transformed an otherwise spontaneous

identification into one arising out of an impermissibly suggestive procedure.

Because we find that the procedure was not impermissibly suggestive, we need not

determine whether the procedure created a substantial likelihood of

misidentification.[16]

## D. Evidentiary Rulings

Smith claims that certain evidence at trial was either irrelevant, or if

---

[16] Smith also argues that the district court should have required the victim to testify before adopting the magistrate judge's report and recommendation. There is no requirement, however, that certain types or forms of evidence must be heard before a motion to suppress evidence can be resolved. We conclude, therefore, that the court could have determined that the identification procedure was not impermissibly suggestive without hearing directly from the victim. Additionally, in considering Smith's argument, we are not confined to the evidence presented at the suppression hearing: "'[I]n ruling on the correctness of the trial court's denial of a motion to suppress,' . . . we 'may consider any evidence presented at the trial of the case and [are] not limited to the evidence introduced [at] the hearing on the motion.'" United States v. Villabona-Garnica, 63 F.3d 1051, 1056 (11th Cir. 1995) (second alteration added) (quoting United States v. Soto, 591 F.2d 1091, 1098 n. 5 (5th Cir.) (quoting United States v. Griffin, 555 F.2d 1323, 1326 n. 3 (5th Cir. 1977)) (internal quotation marks omitted)). In this regard, the victim's testimony at trial substantially corroborated Detective Dickie's account of the identification procedure.

relevant, "substantially outweighed by the danger of unfair prejudice," Fed. R. Evid. 403, and therefore should not have been admitted. He also contends that the court should not have admitted other-crimes evidence under Federal Rule of Evidence 404(b) and opinion evidence under Federal Rule of Evidence 701. While some of this evidence was admitted over Smith's objection at trial, other evidence is being challenged for the first time on appeal and is therefore subject to plain error review. Our analysis is organized accordingly.

### 1. Objections Raised at Trial

Smith objected to the following evidence as either irrelevant, see Fed. R. Evid. 401, 402, or overly prejudicial, see Fed. R. Evid. 403: (1) photographs of Smith naked by himself; (2) photographs of Smith with other women (not the victim) engaged in sexually explicit conduct; and (3) photographs of women (not the victim) striking sexually suggestive positions. We review the district court's evidentiary rulings for clear abuse of discretion. United States v. Tinoco, 304 F.3d 1088, 1119 (11th Cir. 2002). "An abuse of discretion arises when the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." United States v. Baker, 432 F.3d 1189, 1202 (11th Cir. 2005). "The district court possesses broad discretion to admit evidence if it has any tendency to prove or disprove a fact in issue.

35

Conversely, we are mindful that the court's discretion to exclude evidence under Rule 403 is narrowly circumscribed. 'Rule 403 is an extraordinary remedy[,] which should be used only sparingly since it permits the trial court to exclude concededly probative evidence.' The balance under the Rule, therefore, should be struck in favor of admissibility." United States v. Norton, 867 F.2d 1354, 1361 (11th Cir. 1989) (citations omitted) (quoting United States v. Betancourt, 734 F.2d 750, 757 (11th Cir. 1984)). Accordingly, we "look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." United States v. Elkins, 885 F.2d 775, 784 (11th Cir. 1989).

We cannot hold that the district erred in concluding that the challenged evidence was relevant. The pictures of Smith were the ones the victim singled out as photographs of the photographer. Given that Smith's defense was that another person took the pictures, these photographs were certainly relevant in establishing the photographer's identity. The pictures of Smith engaged in sexual acts with other women in a room identical to the one in which the victim was photographed were also relevant in establishing Smith's role in producing the photographs of the victim – the fact that he had appeared in pictures of a sexual nature in what appeared to be the same location could make it more probable that he frequented

the locale for similar purposes. Additionally, these pictures, as well as the pictures of other women in similar poses in the same setting as those of the victim, were relevant to establishing that the pictures of the victim included "lascivious exhibition[s] of genitals or pubic area of any person," 18 U.S.C. § 2256(2)(A) (defining "sexually explicit conduct"),[17] and that Smith "knowingly," as opposed to inadvertently, possessed the pictures of the victim as required by 18 U.S.C. § 2252A(a)(5)(B). Because the district court could have found that these pictures had some tendency to make Smith's defense less probable and the statutory requirements more probable, we do not find that court abused its discretion in finding them relevant under Federal Rule of Evidence 401.

We also cannot say that the district court abused its discretion in finding that the probative value of the questioned evidence was not substantially outweighed by any potential for unfair prejudice, see Fed. R. Evid. 403, particularly in light of the presumptions in favor of admissibility stated above.

---

[17] 18 U.S.C. § 2251(a) prohibits production of visual depictions of "sexually explicit conduct" involving minors, and 18 U.S.C. § 2252A(a)(5)(B) prohibits the knowing possession of "child pornography," which 18 U.S.C. § 2256(8) defines, in part, as involving "sexually explicit conduct." The court instructed the jury, without objection, that sexually explicit conduct included "lascivious exhibition," which, the court explained, involved consideration of "whether the setting of the depiction is such as to make it appear to be sexually inviting or suggestive, for example in a location or in a pose associated with sexual activity . . .[;] and whether the depiction has been designed to elicit a sexual response in the viewer." Record, vol. 12, no. 107 at 74. That the photographs of the victim were found with other sexually explicit photographs could make it more likely that their purpose was to elicit a sexual response.

Smith contends that the naked pictures of himself, pictures of other women, and pictures of Smith with other women were likely to inflame the jurors' emotions and prevented a level-headed evaluation of all the evidence. That is a permissible conclusion but not a necessary one. The jury might also have been able to evaluate the evidence for what it was – photographs from within defendant's lockbox that tended to establish identity, knowledge, and sexual content. That the nature of the crime itself, and therefore the nature of the evidence tending to prove it, is emotionally charged does not mean that the prosecution must be deprived of its most probative evidence. This is particularly true when the district court, as here, offers limiting instructions as to the proper purpose of admitted evidence. Thus, when we maximize the probative value discussed above and minimize any prejudicial impact, we cannot conclude that the district court clearly abused its discretion in admitting the evidence.

## 2. Plain Error

Smith alleges that the following evidence should not have been admitted despite his failure to object at trial: (1) Smith's inmate discharge identification card; (2) repeated references to the fact that Smith was and is incarcerated; (3) an "unsanitized" (non-redacted) recording and transcript of a phone call made by Smith, while incarcerated, to his mother; (4) Officer Mayo's testimony that the

38

pictures he found were pornographic and of young girls; (5) testimony regarding the number of photographs found in the lockbox; and (6) testimony about a particular photograph depicting two penises. "[W]hen a party raises a claim of evidentiary error for the first time on appeal, we review it for plain error only." Baker, 432 F.3d at 1202. For ease of reading and clarity of discussion, we repeat that standard here: if there is error that is plain, and that affects substantial rights, we may exercise our discretion to recognize such an error, so long as it seriously affects the fairness, integrity, or public reputation of judicial proceedings. We have no trouble concluding that Smith cannot satisfy this difficult burden and therefore limit ourselves to a brief discussion of Smith's claims in the margin.[18]

---

[18] Smith alleges that the inmate discharge identification card, as well as the repeated references to his incarceration, including Smith's unsanitized phone conversation from jail, were improperly admitted as "other crimes" evidence. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). We cannot say that this evidence was plainly admitted as propensity evidence. The district court assuredly could have found the evidence to be probative of identity and/or merely descriptive.

Smith also claims that Officer Mayo's testimony that the photographs he observed in the lockbox were pornographic in nature and of "very, very young girls" was opinion evidence offered by a non-expert. We are not satisfied that Officer Mayo's opinion was plainly "scientific, technical, or . . . specialized," Fed. R. Evid. 701, which would have required him to be qualified as an expert pursuant to Federal Rule of Evidence 702, rather than the opinion of a lay witness admissible pursuant to Federal Rule of Evidence 701. Smith, therefore, cannot establish error on this ground.

Additionally, Smith argues that the incarceration evidence, Officer Mayo's opinion testimony, as well as testimony regarding the number of photographs and a description of the anatomical components of a particular photograph, even if otherwise admissible, were substantially more unfairly prejudicial than probative in violation of Federal Rule of Evidence 403. All of this evidence could be considered probative in establishing the identity of individuals in the photographs, the ownership and nature of the photographs and the context surrounding

39

## E. Other Claims Not Raised at Trial

Smith raises several more issues not preserved at trial. These too are reviewed for plain error.

### 1. Lack of Adequate Limiting Instruction

Smith argues that the district court did not provide an adequate limiting instruction with regards to the evidence he challenges in part III.C, supra. The district court did provide a limiting instruction with respect to the photographs of persons other than the victim.[19] As to the remainder of the evidence, because Federal Rule of Evidence 105, which provides for limiting instructions in appropriate circumstances, only operates "upon request," see Fed. R. Evid. 105, "[t]he failure to give a limiting instruction is error only when such an instruction is requested." United States v. Miranda, 197 F.3d 1357, 1360 (11th Cir. 1999). Thus, we find no plain error.

### 2. Jury Instruction Regarding "Producing"

Smith argues that the district court erred by not providing a jury instruction

---

other probative evidence. We cannot say that any of the evidence, even if prejudicial, was plainly unfairly prejudicial let alone plainly so unfairly prejudicial as to substantially outweigh its probative value.

[19] "You may consider this evidence . . . only for the limited purpose of determining whether the identity of the defendant as the perpetrator of the crime charged has been established." Record, vol.12, no. 107, at 70 - 71.

defining "producing" as used in 18 U.S.C. § 2251(a). "Producing" is statutorily

defined, somewhat circularly, as "producing, directing, manufacturing, issuing,

publishing, or advertising." 18 U.S.C. § 2256(3). "It is well settled that a court

need not define terms that are not unduly technical or ambiguous or that are within

the common understanding of the jury." United States v. Pepe, 747 F.2d 632, 674

n.78 (11th Cir. 1984). We do not believe that "producing" is so unduly technical

or ambiguous as plainly to require a specific instruction. Smith contends,

however, that because "producing" necessarily requires an individual to be in the

business of making child pornography, a definition was plainly in order.

Nowhere in the statutory definition or the common understanding of the word

"producing"[20] do we discern a requirement of a monetary profit motive. Thus,

even if "producing," as used in the statute, did require the accused to be in the

pornography business – a proposition about which we are quite skeptical – it is not

obviously so. Accordingly, the district court did not plainly err by not defining

---

[20] A definition of "produce" published contemporaneously to the passage of the Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95-225, § 2(a), 92 Stat. 7 (1998), provides in relevant part: "1. To bring forth; yield. 2. To create by mental or physical effort. 3. To manufacture. 4. To cause or occur to exist; give rise to. 5. To bring forward; exhibit. 6. To sponsor and present to the public . . . ." The American Heritage Dictionary of the English Language (New College ed. 1976).

"producing" for the jury.[21]

### 3. Lack of Notice Regarding Mandatory Sentencing Minima

Smith additionally argues that, prior to sentencing, he was not given formal notice of either (1) the enhanced sentencing range arising from a prior conviction "relating to the sexual exploitation of children," 18 U.S.C.A. § 2251(d) (West, Westlaw through Apr. 2003 amendments);[22] or (2) the requirement that he register as a sex offender as a condition of his supervised release, and requests resentencing. At arraignment on the initial indictment, the court advised Smith that the § 2251(a) charge carried a ten-year minimum and twenty-year maximum sentence. At arraignment on the superseding and second superseding indictments, Smith waived formal readings of the indictments. At no point prior to receiving the presentence report was he advised that he might face anything more than a ten-

[21] Smith also claims that the district court committed plain error by not instructing the jury that "knowingly" applies to each of the statutory elements of both 18 U.S.C. § 2251(a) and § 2252A(a)(5)(B). We note at the outset that, with respect to § 2252A(a)(5)(B), the jury was properly instructed that the Government had to prove that the defendant knew he was possessing child pornography. Because, as discussed, supra part III.A.2, we do not find that there was plain error committed in not requiring knowledge of the interstate nexus, we cannot say the district court committed plain error in not instructing the jury as such. Similarly, as indicated above, supra note 13, even if we were to find plain error in the district court's failure to instruct the jury that proof of knowledge of age is required for § 2251(a), it would be harmless error in light of the jury's finding, based on proper instruction and adequate evidence, that Smith knew the age of the victim for purposes of § 2252A(a)(5)(B).

[22] According to the statute effective at the time, the enhancement increased the sentencing range from ten-to-twenty years to fifteen-to-thirty years. 18 U.S.C.A. § 2251(d) (West, Westlaw through Apr. 2003 amendments).

to-twenty-year sentence.  This, according to Smith, was a violation of his constitutional right to due process.

Smith cites no cases, and we are aware of none, that mandate a formal reading of the Federal Sentencing Guidelines.  The statute under which he was charged, 18 U.S.C. § 2251, specifically delineates the sentencing range for violations of its provisions, both with and without prior offenses relating to sexual exploitation of children.  Moreover, 18 U.S.C. § 3583(d) mandates registration as a condition of supervised release for any person described in 18 U.S.C. § 4042(c)(4), a category of persons that includes individuals convicted of offenses categorized as "Sexual Exploitation and Other Abuse of Children" (including both 18 U.S.C. § 2251 & 2252A).  18 U.S.C. § 4041(c)(4), 18 U.S.C. ch. 110; USSG § 5D1.3(7).  The statutory scheme therefore mandated Smith's sentence, and we cannot say that the court plainly erred by not providing additional notice of the minimum sentencing provisions.

## IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

TJOFLAT, Circuit Judge, specially concurring:

I obviously concur in the court's judgment in its entirety. I write separately to explain why I believe appellate courts so rarely – and, in my view, <u>should only rarely</u> – notice plain evidentiary errors. I arrive at this conclusion based on the interaction between the plain error standard and the inferences that should be drawn from defense counsel's failure to object at trial.

I note, initially, the limited scope of my discussion. I discuss only the admission of evidence by the prosecution, over no objection, in criminal cases. There is no need to address exclusion of evidence offered by the defendant (as the attempted introduction of the evidence would sufficiently raise the issue for full review on appeal) or evidentiary rulings in favor of the defendant (as the prosecution cannot appeal). I am only concerned with criminal cases as I believe that it is only the defendant's Sixth Amendment right to counsel that provides any basis for plain error review. As such, everything I say here applies with even greater force in the civil context where there is no constitutional right to an attorney.[1]

To begin, I recite what should now be a familiar standard: Under plain error

---

[1] I also recognize that the discussion that follows does not neatly fit into circumstances where it only becomes plain that evidence is excludable after trial but prior to appeal.

44

review, an appellate court may exercise its discretion to notice an error that is plain and that affects substantial rights, so long as the error affects the fairness, integrity, or public reputation of judicial proceedings. It should be immediately apparent that the standard itself sets an extraordinarily difficult burden for a defendant to overcome – particularly in instances where the district court has substantial discretion to admit evidence (for example, where the defendant claims that the probative value of a piece of evidence is substantially outweighed by its potential for unfair prejudice, see Fed. R. Evid. 403). Evidentiary rulings, of which counsel and the trial judge should have been aware, are often quite case- and fact-specific and it is therefore unlikely that a defendant would be able to point to a court decision or evidentiary rule making the admission of the evidence obviously erroneous. Despite this difficulty, there certainly are circumstances in which an appellate court could say that, given extant case law at the time of appeal, a piece of evidence admitted at trial was clearly excludable (e.g., hearsay that is not otherwise admissible under Federal Rules of Evidence 803 or 804). I do not believe, however, that even such circumstances are properly recognizable as plain error.

What is often overlooked in the rote application of the plain error standard is that, without objection, it is almost impossible to conclude that the district court

committed error at all.  It is one thing to say that evidence, if objected to, should have been excluded; it is quite another to say that admission of evidence over no objection is error in some abstract sense.  The error in the former circumstance is the district court's failure to sustain the defendant's objection; in the latter, the error is evidently the improper infringement upon a defendant's unwaivable right to be tried only by admissible evidence.  The problem with the second formulation is that defense counsel can waive evidentiary restrictions, and often has legitimate strategic reasons for doing so.  Defense counsel may believe, for example, that a piece of evidence will turn out to be exculpatory rather than inculpatory, or counsel may want to tie a witness to certain statements.[2]  Reviewing admission of evidence for plain error, however, can serve to transform defense counsel's strategic decisions into district court errors.  Trial counsel's sound strategy does not become plain error at appellate counsel's urging.[3]

---

[2] The decision not to object to evidence offered for admission is an aspect of trial strategy that counsel may make on behalf of the defendant.  See Henry v. State of Mississippi, 379 U.S. 443, 451-52, 85 S. Ct. 564, 569, 13 L. Ed. 2d 408 (1965); 3 Wayne R. La Fave et al, Criminal Procedure § 11.6 (2d ed. 2006) ("General agreement exists that the decisions as to guilty plea, jury trial, appeal, defendant's presence at trial, and the defendant testifying are for the defendant, and that decisions on a substantially larger group of matters, such as objecting to inadmissible evidence, are for counsel." (footnote omitted)).  Accordingly, the defendant is bound by the strategic evidentiary decisions made by counsel, so long as effective assistance is provided.

[3] We have been willing to recognize that the possibility for strategic non-objection renders nearly impossible a finding of plain error in the context of a failure to request a limiting instruction.  "Lawyers frequently choose for strategic reasons not to request limiting instructions.  In order to find plain error in this context, therefore, a court must conclude that, as a matter of

46

A conclusion that the admission of certain evidence constitutes plain error is a determination that the evidence was so obviously inadmissible and prejudicial that, despite defense counsel's failure to object, the district court, sua sponte, should have excluded the evidence. Thus, the existence of plain error review forces the district court, in an effort to avoid the reversal of conviction and a retrial, to intervene and exclude the evidence on its own initiative. In determining whether to do so, the district court must either ignore the possibility that defense counsel is choosing not to object for strategic reasons (and therefore intervene in every instance) or must weigh that possibility against the potential time and cost of

---

law, counsel's strategic choice resulted in a manifest miscarriage of justice." Sherman v. Burke Contracting, Inc., 891 F.2d 1527, 1534 (11th Cir. 1990), superseded in non-relevant part by statute as stated in Andrews v. Lakeshore Rehabilitation Hosp., 140 F.3d 1405 (11th Cir.1998); see also United States v. Miranda, 197 F.3d 1357, 1360 (11th Cir. 1999) ("The failure to give a limiting instruction is error only when such an instruction is requested."); United States v. Peaden, 727 F.2d 1493, 1501 (11th Cir. 1984) ("In determining whether the statement requires reversal because no limiting instruction was in fact given, we must first decide at whose door we lay the failure to give the instruction. If the court committed plain error in failing to recognize the need for the limiting instruction sua sponte, we must reverse. However, if Peaden was required to request the instruction, his failure to do so caused its absence. Since for strategic reasons counsel may have chosen not to request an instruction, we would be reluctant to determine as a matter of law that counsel's strategic choice gave rise to a due process violation." (citations omitted)); United States v. Barnes, 586 F.2d 1052, 1059 (5th Cir. 1978) ("Counsel may refrain from requesting an instruction in order not to emphasize potentially damaging evidence and for other strategic reasons. We decline to second guess counsel's decision." (citations omitted)) (In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.). I recognize that plain error review is more patently incompatible with the evidentiary rule in this context, as the rule only operates "upon request." Fed. R. Evid. 105; see Sherman, 891 F.2d at 1534. I believe, however, the observations regarding strategic non-objection carry over into other evidentiary contexts as well.

47

a retrial (assuming one is even possible under the circumstances). To the extent the district court even attempts the latter analysis, however, it does so at a specific moment during the course of the trial without the benefit of the entire record (in particular, what other evidence the prosecution is prepared to offer, and what use the prosecution or defense intends to make of the evidence). Because it is extraordinarily difficult, if not impossible, to deterimine, mid-trial, whether the admission of a certain piece of excludable evidence prejudices a defendant's substantial rights, the possibility of a retrial creates an incentive for the district court <u>always</u> to intervene.[4] This result essentially deprives defense counsel of the ability to determine strategically a client's most effective defense – a consequence I would prefer to avoid.[5] Cf. <u>Estelle v. Williams</u>, 425 U.S. 501, 512, 96 S. Ct. 1691, 1697, 48 L. Ed. 2d 126 (1976) ("Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic

---

[4] I suppose a trial court could also keep a running log of all inadmissible evidence and at the end of trial determine which pieces, in isolation or in tandem, are likely substantially to affect the defendant's rights and strike those pieces with enough surgical precision to foreclose appellate reversal. I believe, more realistically, a trial court would simply always intervene.

[5] It would also not be sufficient for the district court to call attention to the excludability of the evidence and force defense counsel to waive exclusion. Such a requirement may inappropriately force defense counsel to expose his defense strategy to the Government. Nor would it be appropriate to require the court to hold a sidebar conference, out of the presence of the prosecutor, to inform defense counsel that the court believes an offered piece of evidence unduly prejudices the defendant and inquire of counsel how the admission of the evidence fits into a competent defense strategy.

and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system.").

I should be quick to add that I hold no illusions of infallibility with respect to the legal profession. In some cases, defense counsel may actually fail to notice that inadmissible evidence is being admitted. In others, however, counsel may make a strategic decision not to object to the admission of evidence. The role of an appellate court under plain error review, therefore, is to sort out the error from the strategy, to the extent strategy is considered at all. This is a role for which appellate courts are particularly ill-suited. I believe our ineffective assistance of counsel case law is instructive in this regard.

Ineffective assistance claims invariably involve a determination of whether an attorney was acting strategically or incompetently. We have appropriately concluded that such determinations ought not to be made on direct appeal. See United States v. Griffin, 699 F.2d 1102, 1107 (11th Cir. 1983) ("The law of this Circuit is that claims of inadequate representation cannot be determined on direct appeal where such claims were not raised before the District Court and there has been no opportunity to develop and include in the record evidence bearing on the merits of the allegations."); id. at 1107-09. Without factual development, it is

nearly impossible for an appellate court to determine whether or not counsel's decisions were strategic or to assess the overall quality of counsel's representation. See, e.g., United States v. Prince, 456 F.2d 1070, 1070-71 (5th Cir. 1972) ("[Defendant] can not properly raise the issue of the adequacy of counsel for the first time on direct appeal. The record now before us does not present sufficient facts for a proper resolution and determination of that issue. The question was not raised in the district court and no facts bearing upon the subject were presented to the trial court. The government has not had an opportunity to present evidence opposing the claims of [defendant] that his attorney was ineffective."). Similarly, in the context of plain error review of "improperly" admitted evidence, it is extremely difficult, although not impossible, to determine whether counsel's failure to object to the admission of excludable evidence was error or strategy. Cf. Flores v. Estelle, 513 F.2d 764, 770 (5th Cir. 1975) (Goldberg, Circuit Judge, dissenting) ("Nor is this even a case in which we might reasonably judge that counsel silently disregarded the point as a tactical gambit in a complex trial: there was only one question at issue and that issue was being proved by the State entirely through hearsay. In such a context, and where the objective events recorded in the transcript lend speculation no support, I am unwilling to attribute imaginary waiver strategies into the consciousness of counsel which any realistic

conception of the circumstances of the hearing fairly assures were not there."
(footnote omitted)).  Given the factual dependency of this determination, I do not
believe appellate courts should find plain evidentiary error – save for the extreme
case where there could be no reasonable strategic reason for declining to object at
the time the evidence is admitted.  There is a forum better suited for this purpose –
namely a collateral attack proceeding on a claim of ineffective assistance of
counsel.

Moreover, were we to review claims of evidentiary error without factoring
in the strategic reasons not to object (i.e., by simply applying the plain error
doctrine and assuming that all excluded evidence admitted with no objection is
error), we would, in fact, be providing defense counsel with a strategic reason not
to object.  Despite our stated concern about ensuring that plain error review does
not, in effect, serve as a trial strategy, see, e.g., United States v. Brown, 548 F.2d
1194, 1207 (5th Cir. 1977) (noting that the plain error standard is strict "in order
to . . . prevent parties from gambling for favorable verdicts and then resorting to
appeal on errors that might have easily been corrected by objection at trial"
(quoting United States v. Jacquillon, 469 F.2d 380, 386 (5th Cir. 1972)) (internal
quotation marks omitted)), plain error review in this context does precisely that.
Defense counsel may choose not to object to the admission of certain evidence –

perhaps believing it may turn out to be exculpatory – with the understanding that, if wrong, the defendant will have an opportunity to challenge the admission of the evidence on appeal. Where we find evidence of this strategy in the record, we do not find plain error. United States v. Sisto, 534 F.2d 616, 624 n.9 (5th Cir. 1976) ("If the record indicates that counsel for the complaining party deliberately avoided making the proper objection or request, plain error will almost never be found. This court will not tolerate 'sandbagging' defense counsel lying in wait to spring post-trial error."). As previously mentioned, however, appellate courts are poorly situated to discern litigation strategy, and unless defense counsel feels the need to disclose his strategy on the record, plain error review provides a strategic hedge against potentially risky litigation decisions, and encourages defense counsel not to object to inadmissible evidence – at least at the margins.[6]

Presented, then, with the choice between (1) presuming legitimate strategy and finding error in the extreme case and (2) presuming error and rarely finding improper strategy, I choose the former. I arrive at this conclusion by borrowing further from our ineffective assistance case law. As is oft stated, we generally

_____

[6] Indeed, by reversing the conviction under plain error review as opposed to a finding of ineffective assistance of counsel, we misallocate responsibility for the error to the court as opposed to counsel, where it appropriately belongs. Any diligence incentive inspired by fear of being labeled "ineffective" is thereby eliminated. For more on the interconnection between plain error and ineffective assistance, see infra.

presume that lawyers perform competently.  See, e.g., United States v. Cronic, 466

U.S. 648, 658, 104 S. Ct. 2039, 2046, 80 L. Ed. 2d 657 (1984) ("[W]e presume

that the lawyer is competent to provide the guiding hand that the defendant

needs."); Bell v. Cone, 535 U.S. 685, 718, 122 S. Ct. 1843, 1863, 152 L. Ed. 2d

914 (2002) (Stevens, J., dissenting) ("[A] presumption that every lawyer . . . has

performed ethically, diligently, and competently is appropriate because such

performance generally characterizes the members of an honorable profession.").

We have recently noted:

> "[C]ounsel will not be deemed unconstitutionally deficient because of
> tactical decisions."  There is a strong presumption that counsel's
> performance was reasonable and adequate, with great deference being
> shown to choices dictated by reasonable strategy.  "The presumption of
> reasonableness is even stronger when we are reviewing the performance of
> an experienced trial counsel."  To overcome this presumption, the petitioner
> "must establish that no competent counsel would have taken the action that
> his counsel did take."

Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (citations and paragraph

break omitted) (quoting McNeal v. Wainwright, 722 F.2d 674, 676 (11th Cir.

1984) (citations omitted); Callahan v. Campbell, 427 F.3d 897, 933 (11th Cir.

2005); Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)

(footnote and citation omitted)).  I believe this presumption is just as relevant in

the plain error context as in the ineffective assistance context.  As such, so long as

53

we are unable to take judicial notice that no competent attorney would fail to object to the admission of certain evidence, I would not say that the district court's failure sua sponte to intervene and exclude the evidence is error.

Not only do I believe that our ineffective assistance case law is instructive as to how we should treat claims of plain evidentiary errors, but I also believe that there is a connection between the two issues that is rarely, if ever, discussed. In order to satisfy the first three prongs of the plain error standard, we would have to find: error, that should have been obvious to counsel, and that seriously prejudiced the defendant's substantial rights. In other words, counsel was incompetent for not having objected.[7] In fact, counsel may have been incompetent as many as three times (once at the time of the evidence was admitted, once more when he failed to move to strike the evidence, and yet again during closing argument should the Government comment on the evidence) or perhaps only once but as late as closing argument when the previously latent prejudice became clear. Yet, if we then choose not to exercise our discretion to notice the error, or if we could not say

---

[7] "To prove ineffective assistance of counsel, [defendant must] establish 'both that counsel's performance was deficient and that the deficient performance prejudiced the defense.'" Rolling v. Crosby, 438 F.3d 1296, 1300 (11th Cir. 2006) (quoting Maharaj v. Sec'y for Dep't of Corr., 432 F.3d 1292, 1318 (11th Cir.2005). In concluding that the first three prongs of plain error are satisfied, we determine that counsel made an obvious error that affected defendant's substantial rights. To the extent the doctrines of ineffective assistance and plain error are not perfectly coterminous, they certainly overlap significantly.

54

that the error affected the fairness, integrity, or public reputation of judicial proceedings, plain error would not be found.[8] Thus, we would not order a retrial on direct appeal, but, without the benefit of briefing or factual development, we would essentially be providing a very firm grounding for a subsequent ineffective assistance determination on collateral attack. What makes this particularly troubling for me is that in an ineffective assistance claim, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Maharaj v. Sec'y for Dept. of Corr., 432 F.3d 1292, 1318 (11th Cir. 2005) (quoting Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984) (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S. Ct. 158, 164, 100 L. Ed. 83 (1955)) (internal quotation marks omitted)). Yet, because we would not find plain error if we were to believe that defense counsel strategically chose not to object, a finding of plain error that affects defendant's substantial rights – a determination likely made with no consideration of strategy and certainly made with no stated presumption in

---

[8] I note that, even if it were possible for us to conclude that there was plain error that affected defendant's substantial rights, it would still be nearly impossible to find that the plain error standard was satisfied. It would be very difficult to conclude that the fairness, integrity, or public reputation of the judicial proceedings had been undermined where defense counsel, whom we presume to be competent, declined not once, but perhaps three times, to object to the admission of the evidence. Again, to the extent we believe this failure to object speaks to counsel's competence, collateral review provides a more appropriate forum to resolve that issue.

favor of strategy – at least implies that defense counsel's failure to object was not strategic. Consequently, in such circumstances, there is a strong argument to be made that we unwittingly shifted the presumption on collateral attack from strategy to incompetence. The justification for this result is not apparent to me.

For the foregoing reasons, I would not engage in plain error review of the admission of excludable evidence unless I were certain that there could be no reasonable strategic reason for not objecting at the time the evidence was admitted.