[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 8, 2006
THOMAS  K. KAHN
CLERK

_____

No. 04-13838

_____

D. C. Docket No. 03-20473-CR-UUB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEAN-MARIE ROSEMOND DULCIO,
PIQUION ST. FLEUR

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(March 8, 2006)**

Before EDMONDSON, Chief Judge, BARKETT, Circuit Judge, and HUNT[*],
District Judge.

---

[*] Honorable Willis B. Hunt, Jr., United States District Judge for the Northern District of
Georgia, sitting by designation.

PER CURIAM:

Jean-Marie Dulcio ("Dulcio") and Piquion St. Fleur appeal their convictions, following a jury trial for conspiracy to import and possess cocaine as well as actual possession and importation of cocaine.[1]  Dulcio and St. Fleur raise a number of procedural and evidentiary issues on appeal, and St. Fleur also appeals his 151 month sentence on the basis of United States v. Booker, 125 S. Ct. 738 (2005).

## BACKGROUND

On June 2, 2003, agents from the Bureau of Customs and Border Protection inspected a cargo shipment of handicrafts from Haiti at Miami International Airport and found that it contained cocaine.  Law enforcement officers thereafter kept the shipment under surveillance and observed two men picking up paperwork for the cargo.  St. Fleur took possession of the cargo as consignee in a U-Haul truck rented by Dulcio and St. Fleur, and law enforcement officers followed the truck to North Miami until it parked at 11520 NE 13th Avenue, the residence of Dulcio and his wife, co-defendant Marie Freda Dulcio.[2]  A few hours later law enforcement officers had the truck towed to a controlled area.

The next day St. Fleur, Dulcio, Marie Freda Dulcio, and a confidential

---

[1] The third convicted co-defendant, Marie Freda Dulcio, initially joined this appeal but later filed a motion to dismiss her appeal which was granted by this court.

[2] St. Fleur was the brother of co-defendant Marie Freda Dulcio.

informant arrived at the impound lot where the U-Haul truck had been taken. Dulcio signed a release form for the truck and drove it out of the lot, and then Dulcio, St. Fleur, and Marie Freda Dulcio drove away in a black SUV while the confidential informant drove the U-Haul truck. Police officers pulled over the SUV, arrested Dulcio, St. Fleur, and Marie Freda Dulcio, and seized the cargo shipment, which contained 19.01 kilograms of cocaine. After waiving his Miranda rights, Dulcio admitted to law enforcement agents that he knew that he was picking up drugs.

The government also presented evidence involving two other fugitive defendants, Mona Rinchere and Jean Boles Dumay, in an ongoing conspiracy to import cocaine, including a similar situation at Miami International Airport in 2000. St. Fleur told law enforcement officers that the May 2003 shipment had come from Mona and that he had known Mona for 20 years. Marie Freda Dulcio testified at trial that she, Dulcio, and St. Fleur all knew Mona and had done business with her in the past. She also testified that it was St. Fleur and Mona who had arranged the shipment from Mona in May 2003, and that St. Fleur spoke to Mona once the shipment had arrived, before they were arrested. Following his arrest, St. Fleur told a fellow inmate, Marcus Jefferson, that he had "been getting dope from Mona for many, many years."

3

The government initially charged St. Fleur, Dulcio, and Marie Freda Dulcio based on their involvement in the 2003 shipment described above. However, the government subsequently filed a superceding 6-count indictment against St. Fleur, Dulcio, Marie Freda Dulcio, Dumay, and Rinchere, based on both the events of 2000 and 2003. As Dumay and Rinchere were fugitives, the government proceeded to trial against Dulcio, Marie Freda Dulcio, and St. Fleur. The jury found St. Fleur guilty on all counts[3] and Dulcio guilty on counts 2 and 6. The district court sentenced St. Fleur to a term of 151 months giving three alternative bases for the sentence.[4]

On appeal Dulcio and St.Fleur argue: (1) that the district court improperly admitted expert testimony which usurped the jury's function; (2) the district court erroneously rejected a proposed jury instruction on multiple conspiracies; (3) the government, in bad faith, superceded its initial indictment with a superseding indictment adding events unrelated to their conduct. St Fleur additionally argues

---

[3] The counts of this second indictment against Dulcio and St. Fleur were as follows. Count 1: knowingly and intentionally conspiring to import cocaine into the United States in violation of 21 U.S.C. §§ 952(a), 963 and 960(b)(1)(B); Count 2: knowingly and intentionally conspiring to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846; Count 5: knowingly and intentionally importing cocaine into the United States in violation of 21 U.S.C. §§ 952(a), 960(b)(1)(B) and 18 U.S.C. § 2; Count 6: knowingly and intentionally possessing with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii) and 18 U.S.C. § 2.

[4] The sentences were based on three alternatives: if the sentencing guidelines were constitutional, if Blakely applied to the guidelines, and if sentencing became indeterminate.

that his convictions should be vacated because: (4) his trial should have been severed from that of Dulcio and he should have been granted a new trial as a result of prejudicial statements made by co-defendant Dulcio during their joint trial; (5) his counsel's closing argument was erroneously restricted; (6) his motion for acquittal should have been granted because the evidence presented was insufficient to support his convictions; and (7) his sentence should be vacated because the district court failed to rule on his objections to the pre-sentence investigation report and imposed three alternative sentences. We first address the evidentiary issue raised by both Dulcio and St. Fleur and then address St. Fleur's additional arguments.

## DISCUSSION

### A. Admissibility of Expert and Lay Testimony

At trial the government sought to introduce expert testimony by agent Gary Imhoff. Objections to Imhoff's testimony on the basis of unfair surprise, lack of qualification, prejudice, and Federal Rule of Evidence 704(b) were denied by the district court. Imhoff opined, based on his experience, that individuals picking up shipments of drugs generally do have knowledge of the contents of the shipment.

When experts testify, the opposing party can object for a number of reasons. For example, objections may be made to the qualification of the expert under Rule

5

702, <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 589 (1993), the reliability of the testimony presented, <u>id.</u> at 592-93, or to the experience on which the expert relies for her opinion, <u>see</u> <u>United States v. Frazier</u>, 387 F.3d 1244, 1261 (11th Cir. 2004) (en banc) (holding that when a witness relies "solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts").

In this appeal, Dulcio and St. Fleur do not object on any basis other than that the expert testimony at trial usurped the function of the jury. They argue that this testimony violated Federal Rule of Evidence 704(b) by expressing an "opinion or inference as to whether the defendants did or did not have the mental state . . . constituting an element of the crime charged . . . ."[5]

Courts have differed over whether the admission of expert testimony on knowledge of the presence of drugs is error in violation of Rule 704(b). <u>Compare</u> <u>United States v. Gutierrez-Farias</u>, 294 F.3d 657, 663 (5th Cir. 2002) (finding that

---

[5] Federal Rule of Evidence 704(b) reads in full:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Fed. R. Evid. 704(b).

6

the district court abused its discretion by admitting expert testimony of a government agent as to knowledge of the presence of drugs in a vehicle), with United States v. Richard, 969 F.2d 849 (10th Cir. 1992) (finding no error where a government expert testified that "no drug dealer of a drug deal this size is going to have four persons that don't know anything about it").

Here, we need not address whether the district court erred,[6] because even if there was error in this case it would be harmless, as the error "did not affect the verdict, or had but very slight effect,"[7] because of the availability of other admissible evidence, such as the testimony of Marcus Jefferson against St. Fleur, the relationship between the Dulcios, St. Fleur, and Mona Rinchere, and the testimony of Marie Freda Dulcio that her brother and Mona had organized this 2003 shipment. See United States v. Ramirez-Velasquez, 322 F.3d 868, 879 (5th Cir. 2003) (finding that a violation of Rule 704(b) was error, but that this error was harmless as it did not affect the substantial rights of the defendant where there was

---

[6] District court rulings on the admissibility of expert testimony are subject to the abuse of discretion standard. Rink v. Cheminova, Inc., 400 F.3d 1286 (11th Cir. 2005). "This standard of review requires that we defer to the district court's ruling unless it is "'manifestly erroneous.'" Because the task of evaluating the reliability of expert testimony is uniquely entrusted to the district court under Daubert, we give the district court "considerable leeway" in the execution of its duty." Id. at 1291 (citations omitted).

[7] United States v. Hornaday, 392 F.3d 1306, 1315 (11th Cir. 2004) ("non-constitutional error is harmless if, viewing the proceedings in their entirety . . . a court determines that the error did not affect the verdict, or had but very slight effect . . . ").

7

otherwise sufficient evidence to sustain the conviction); Gutierrez-Farias, 294 F.3d at 663 (finding that although the district court abused its discretion by admitting expert testimony of a government agent as to knowledge of the presence of drugs in a vehicle, the error was harmless because of the otherwise "strong case" against the defendant).

Two other government witnesses, Agent Ferdella and Agent Reddin, had not been disclosed as experts but were permitted by the trial judge to express "lay opinion testimony." Agent Ferdella's "lay opinion testimony" concerned the modus operandi of people involved in the drug business, tying each co-defendant's role to that typically seen in a narcotics importing business. Agent Reddin testified as a lay witness regarding the shipment of cocaine apprehended in 2000, and opined that persons picking up a high value narcotics shipment "knew what was in there."[8]

When lay witnesses testify, the opposing party can object for a number of reasons, including the witness's lack of personal knowledge, see United States v. Castro, 89 F.3d 1443, 1454 (11th Cir. 1996), or that the opinion testimony of lay witnesses is not "helpful to the determination of a fact in issue," F. R. Evid. 701(b). In this case, Dulcio and St. Fleur first argue that Reddin and Ferdella's lay opinion

---

[8] The district court ultimately ruled that the three defendants on trial had not been proven to have anything to do with the January, 2000, crime.

8

testimony as to whether people transporting shipments of cocaine know that they are transporting cocaine violated Rule 704(b). Because Rule 704(b) expressly applies only to expert witness testimony and Rule 704(a) expressly allows opinion testimony by non-expert witnesses,[9] this argument lacks merit.

Dulcio and St. Fleur also argue that Ferdella's testimony as a lay witness violated Federal Rule of Evidence 701's mandate that lay witnesses may not testify based on "scientific, technical, or other specialized knowledge . . . ." Fed. R. Evid. 701(c). We agree that it is error to admit opinion testimony of lay witnesses based on specialized knowledge, such as Ferdella's testimony here. See Fed. R. Evid. 701 Adv. Comm. Notes (2000) ("Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 [for expert witnesses] will be evaded through the simple expedient of proffering an expert in lay witness's clothing."). We find the error to be harmless, however, due to the other evidence against Dulcio and St. Fleur, as noted above. See United States v. Cameron, 907 F.2d 1051, 1059 (11th Cir. 1990) ("Error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties."). Moreover,

---

[9] "Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." F. R. Evid. 704(a). See, e.g., Carter v. Decisionone Corp., 122 F.3d 997, 1005 (11th Cir. 1997) (noting that "[Rule 704(a)] has abolished the prohibition on opinion testimony concerning the "ultimate issue" in a case").

Reddin proffered the same testimony without objection.

## B. **Prosecutorial Misconduct**

Dulcio and St. Fleur argue for the first time on appeal that the superceding indictment against them was filed in bad faith and constituted prosecutorial misconduct. Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), a motion alleging a defect in the indictment must be raised before trial. Since this was not the case here, this issue is deemed to have been waived. See also United States v. Nichols, 937 F.2d 1257, 1261 (7th Cir. 1991) ("Because Nichols did not object to the superseding indictment or raise the issue of prosecutorial vindictiveness below, he has also waived this issue on appeal.").

## C. **Denial of St. Fleur's Proposed Jury Instruction**

Dulcio and St. Fleur next argue that the trial court erred in denying St. Fleur's proposed jury instruction on multiple conspiracies.[10] We review a district court's refusal to give a jury instruction requested by the defense for abuse of

---

[10] St. Fleur's proposed jury instruction read in part:
> You are further instructed, with regard to the alleged conspiracy offense, that proof of several separate conspiracies is not proof of the single, overall conspiracy charged in the indictment unless one of the several conspiracies which is proved is the single conspiracy which the indictment charges. . . .
> In other words, to find a Defendant guilty you must unanimously find that such Defendant was a member of the conspiracy charged in the indictment and not a member of some other separate conspiracy.

discretion.  United States v. Chastain, 198 F.3d 1338, 1350 (11th Cir. 1999).  For the denial of a requested jury instruction to be reversible error a defendant must show that the instruction: "(1) was a correct statement of the law; (2) was not adequately covered in the instructions given to the jury; (3) concerned an issue so substantive that its omission impaired the accused's ability to present a defense; and (4) dealt with an issue properly before the jury."  United States v. Brazel, 102 F.3d 1120, 1139 (11th Cir. 1997)(citation omitted).  Because the proposed instruction did not meet this test, we affirm the district court's decision.

While St. Fleur's proposed instruction was a pattern jury instruction that met the first and last factor of the test, the instruction was both "adequately covered" by the instructions the jury received and its omission did not "impair the accused's ability to present a defense."  Indeed, the district court instructed the jury that "[E]ach defendant is only on trial for the specific offenses alleged in the indictment."   This instruction has the same effect as St. Fleur's proposed instruction: it required the jury to find that Dulcio and St. Fleur were members of the charged conspiracy and not members of some other conspiracy.  For this reason, the instruction cannot be said to have impaired Dulcio and St. Fleur's ability to present a defense.

**D.  Restriction of Scope of Defense Counsel's closing argument**

11

St. Fleur argues that the district court improperly restricted his closing argument by precluding counsel from arguing two inferences that the jury could make from the record evidence. The district courts have "broad discretion over closing argument and will be reversed only if counsel is prevented from making all legal arguments supported by the facts." United States v. Hall, 77 F.3d 398, 400-01 (11th Cir. 1996). We find no such error and affirm the district court's ruling.

St. Fleur wanted to argue during his closing that the jury should draw one of two inferences: either that the informant who accompanied St. Fleur to pick up the U-Haul at the lot was "crooked," or that the police blundered in preventing the informant from delivering the shipment of cocaine to its ultimate recipient. The district court ruled that St. Fleur had no good faith basis to argue that the informant was "crooked," as no evidence had been offered to support such an inference. The district court also held that the delivery of cocaine to its ultimate recipient was not a relevant issue in the case. Since counsel was not prevented from making a legal argument supported by the record facts, the district court will not be reversed on this issue.

**E. Denial of St. Fleur's motions to sever trials and for a new trial**

St. Fleur appeals the district court's denial of his motions to sever and order a new trial, based on a potential violation of Bruton v. United States, 391 U.S. 123

12

(1968), arising out of certain statement made by Dulcio. Because any potential Bruton error was harmless in this case, we affirm.

In United States v. Gonzalez, 183 F.3d 1315 (11th Cir. 1999), we held that a blatant Bruton error was harmless when evidence produced at trial other than that derived from the Bruton error indicated the defendant's full participation in the drug conspiracy. Id. at 1323. The Bruton error was not harmless as applied to the two other defendants, however, where the "only evidence linking them" to the offense was the co-defendant's confession. Id. In this case, there was more evidence linking St. Fleur to the conspiracy than Dulcio's statement, including his own statements, and testimony regarding his actions relating to the cargo shipment. Since Dulcio's statement was not the "only evidence" linking St. Fleur to the conspiracy, any Bruton error is harmless. Therefore, the denial of both motions is affirmed.

## F. Denial of Motion for Acquittal

St. Fleur argues that the district court erred when it denied his motion for acquittal. We review a district court's decision to deny a motion for judgment of acquittal based on sufficiency of the evidence de novo. United States v. Williams, 144 F.3d 1397, 1401 (11th Cir. 1998). In determining whether the government produced sufficient evidence, we must review the evidence in the light most

13

favorable to the government and draw all reasonable factual inferences in favor of the jury's verdict. Id. In this case, because sufficient evidence was presented by the government at trial, we affirm the district court's denial of the motion.

At trial, the government presented evidence that a shipment arrived at Miami International Airport from Haiti, that it contained 19.01 kilograms of cocaine, that St. Fleur was the consignee of the shipment, and that St. Fleur drove the truck containing the shipment to Dulcio's residence. St. Fleur stated that the shipment came from "Mona" in Haiti and acknowledged that his name was on the shipment. The record also contains statements made by St. Fleur to a cellmate, that he had received "dope" from Mona for many years. This evidence, taken in the light most favorable to the government and drawing all reasonable factual inferences in favor of the jury's verdict, is sufficient to support the jury's guilty verdict as to St. Fleur.

## G. Sentencing

Finally, St. Fleur argues that the district court violated his constitutional rights when it imposed his sentence. Because St. Fleur preserved his Blakely/Booker claim at sentencing, we review for harmless error. United States v. Petho, 409 F.3d 1277, 1279 (11th Cir. 2005). We find that any error was harmless and affirm.

St. Fleur's PSI set his base offense level at 34 under the sentencing

14

guidelines, based on a section which applies to offenses involving at least 15 kilograms, but less than 50 kilograms, of cocaine. USSG § 2D1.1(c)(3). No adjustments or departures applied to St. Fleur. St. Fleur filed written objections to the PSI, arguing that since the indictment charged him with "five kilograms or more of cocaine," his base offense level should be 32. The district court imposed three alternative sentences on St. Fleur, each consisting of 151 months. The alternative sentences were directly linked by the district court to the applicability of Blakely v. Washington, 542 U.S. 296 (2004), to the sentencing guidelines. For the court, three scenarios were possible: (1) that the guidelines were constitutional; (2) that Blakely applied to the guidelines; or (3) that sentencing would become indeterminate. The court found that, under each scenario, St. Fleur would be sentenced to 151 months.

St. Fleur's sentence does not involve any constitutional error, as his offense level was based on the presence of 19 kilograms of cocaine, a fact found by the jury at trial. See United States v. Mathenia, 409 F.3d 1289, 1291 (11th Cir. 2005) ("'The constitutional error is the use of extra-verdict enhancements to reach a guidelines result that is binding on the sentencing judge; the error is in the mandatory nature of the guidelines once the guidelines range has been determined.'" (citation omitted)). However, there is statutory error when a district

court sentences a defendant "under a mandatory guidelines scheme, even in the absence of a Sixth Amendment enhancement violation." United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005). Such an error is harmless, however, when the "mandatory nature of the guidelines in place at the time of sentencing did not contribute" to the sentence. Petho, 409 F.3d at 1280 (finding harmless error when a district court judge imposed a sentence of 37 months and noted that "the sentence I'm going to impose of 37 months is the same sentence that I would impose if Blakely were applied to the Federal Sentencing Guidelines so that the guidelines were non-binding."). Here, the district court clearly stated that the sentence of 151 months would have been imposed under three different scenarios, including the unconstitutionality of the guidelines, and therefore the error is harmless.

**AFFIRMED**

EDMONDSON, Chief Judge, concurs in the result.