[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 12, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-16598
Non-Argument Calendar

_____

D. C. Docket No. 04-00083-CR-J-20-HTS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID BOSTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 12, 2006)**

Before DUBINA, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Appellant David Boston ("Boston") appeals his conviction after a jury found

him guilty of conspiring to pass and utter counterfeit checks in violation of 18 U.S.C. §§ 371, 514. His co-conspirator, Glenda Boston ("Glenda") pled guilty to the conspiracy charge. On appeal, Boston first contends that he should have been able to comment on Glenda's failure to testify for the government, and the district court should not have told the jury to disregard his comment regarding her failure to testify, but rather, should have given a missing witness instruction, allowing the jury to infer that her testimony would have been unfavorable to the government. Boston also challenges the district court's reduction in his time for closing argument and contends that he was denied his Fifth Amendment right to a fair trial when the district court reduced his attorney's time for closing argument for each extra witness he presented. He also argues that the district court's alleged bias against him deprived him of a fair trial. We address each argument in turn.

**I.**

We review "jury instructions *de novo* to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party" and "[s]o long as the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instructions." *United States v. Zlatogur*, 271 F.3d 1025, 1029 (11th Cir. 2001) (citation omitted). We review "a district court's refusal to give a jury instruction requested by the defense for abuse of

discretion." *United States v. Dulcio*, 441 F.3d 1269, 1275 (11th Cir. 2006). For the denial of a requested jury instruction to be reversible error a defendant must show that the instruction: "(1) was a correct statement of the law; (2) was not adequately covered in the instructions given to the jury; (3) concerned an issue so substantive that its omission impaired the accused's ability to present a defense; and (4) dealt with an issue properly before the jury." *Id.* (citation omitted).

"[I]f a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." *Graves v. United States*, 150 U.S. 118, 121, 14 S. Ct. 40, 41 (1893). "When a witness is peculiarly within the control of one party, and that witness' testimony would elucidate facts in issue, an instruction is appropriate regarding the permissible inference which the jury may draw from the party's failure to call the witness." *United States v. Nahoom*, 791 F.2d 841, 846 (11th Cir. 1986). However, to receive a "missing witness instruction," the requesting party must demonstrate: "the potential witness' unavailability in a physical or practical sense; and . . . [that] the potential testimony [would be] relevant and noncumulative." *Jones v. Otis Elevator Co.*, 861 F.2d 655, 659 (11th Cir. 1988). An inference from a party's failure to call a witness equally available to both parties is impermissible. *United*

*States v. Chapman*, 435 F.2d 1245, 1247 (5th Cir. 1971). A party who may or may not invoke the Fifth Amendment is equally available to either party. *Id.* at 1247-48.

A witness's unavailability is not determined solely from physical presence or accessibility to subpoena, but rather, will turn on the witness's relationship to the nonproducing party. *Jones*, 861 F.2d at 659. A witness is unavailable in the practical sense when the relationship is such that it creates a bias or hostility against the opposing party. *Id.* at 659-60 (noting that because of employee's economic interests, employer-employee relationship created practical unavailability).

The district court is not required to give the missing witness instruction to the jury if the witness would testify against the interests of the defendant. *United States v. Link*, 921 F.2d 1523, 1529 (11th Cir. 1991).

We conclude from the record that Boston did not meet his burden of showing that the missing witness instruction should have been given. First, he did not show how Glenda was "peculiarly within the control" of the government and unavailable to him. Notably, Glenda's plea agreement did not contain a cooperation agreement, so there was no indication that she was helping the government with its case against Boston such that the relationship between her and

4

the government – the nonproducing party – would create bias or hostility against him. *See Jones*, 861 F.2d at 659. That Glenda pled guilty, alone, does not indicate that she was "peculiarly" within control of the government as she still retained her Fifth Amendment privilege. *See United States v. Kuku*, 129 F.3d 1435, 1437-38 (11th Cir. 1997) (codefendant who had entered guilty plea but had not yet been sentenced could properly invoke his Fifth Amendment privilege against self-incrimination at defendant's trial).

Further, nothing in the record indicates that Boston made any attempt to locate and subpoena Glenda or call her as a witness. Indeed, she was not on any of his witness lists, and he never indicated during trial that he intended to call her. It is further not known whether Glenda would have invoked her Fifth Amendment privilege if called, and thus, she was equally available to both Boston and the government. *See Chapman*, 435 F.2d at 1247-48.

We also conclude from the record that Boston failed to meet his burden of showing that the missing witness instruction should have been given because he did not show how Glenda's testimony would have been favorable to him. Indeed, testimony at trial indicated that Glenda's testimony, if any, would likely be unfavorable to Boston, as certain witnesses testified that they saw her make checks and received checks from her. Further, in her plea agreement, she identified

5

Boston as one of her co-conspirators. As Glenda would likely have testified against the interests of Boston, the district court was not required to give the missing witness instruction to the jury. *See Link*, 921 F.2d at 1529; *see also United States v. Perez-Tosta*, 36 F.3d 1552, 1556 n.2 (11th Cir. 1994) (district court did not err in failing to give missing witness instruction for government's failure to call only agent with direct view of defendant's house because other testimony at trial indicated that his testimony would likely be unfavorable to defendant).

Thus, since Boston did not establish the requisite predicate for the missing witness instruction, the district court did not err in telling the jury to disregard Boston's comment and its instructions did not misstate the law. Since the missing witness inference was not properly before the jury, we conclude that the district court did not abuse its discretion in denying Boston's requested instruction. *See Dulcio*, 441 F.3d at 1275.

## II.

While the district court "has an obligation to insure a fair trial," *see United States v. Thayer*, 204 F.3d 1352, 1355 (11th Cir. 2000), it also "has broad discretion in the management of the trial," and we will not reverse on the court's management rulings "absent a clear showing of abuse." *United States v. Hilliard*, 752 F.2d 578, 582 (11th Cir. 1985). In this respect, a district court's instructions to

counsel concerning closing arguments "will be reversed only if counsel is prevented from making all legal arguments supported by the facts." *United States v. Hall,* 77 F.3d 398, 400 (11th Cir. 1996). Furthermore, the period of time to be allotted for a defendant's closing argument is within the sound discretion of the district court. *United States v. Carter*, 760 F.2d 1568, 1581 (11th Cir. 1985). If a closing argument is unreasonably curtailed, reversal may be warranted. *United States v. Bernes*, 602 F.2d 716, 722 (5th Cir. 1979). A defendant, however, has a duty to exercise due diligence in procuring the attendance of witnesses. *See United States v. Darby*, 744 F.2d 1508, 1522 (11th Cir. 1984) (in the context of requesting a continuance).

Under the Fifth Amendment, a criminal defendant is only entitled to a fair trial, not a perfect one. U.S. Const. amend. V; *United States v. Ramirez*, 426 F.3d 1344, 1353 (11th Cir. 2005).[1] To amount to reversible error on the basis of bias, a judge's remarks must demonstrate such pervasive bias and unfairness that they prejudice one of the parties in the case. *United States v. Ramirez-Chilel*, 289 F.3d 744, 750 n.6 (11th Cir. 2002).

Here, we conclude from the record that the district court did not abuse its

---

[1] It is noted that Boston did not raise a constitutional challenge below. However, under either a *de novo* or plain error standard of review, Boston's claim fails as the district court did not abuse its discretion in limiting Boston's time for closing argument or otherwise demonstrate bias against him.

discretion in limiting Boston's time for closing argument. Indeed, it is clear from the record that Boston did not exercise due diligence in securing the attendance of witnesses Detective Smith or Kendell Brown. The court, based on indications from Boston on Wednesday, had informed the jury that the trial would be done by Thursday or Friday at the latest. However, on Thursday, Boston had only one witness ready to testify, and had not secured Smith's presence. In fact, Boston had served Smith with the subpoena only the day before he was supposed to testify, knowing he had to travel from West Palm Beach to Jacksonville. Boston also indicated that he would not call Brown, but did call her unexpectedly on Friday morning and, as explanation, said that he had been unable to locate her, even though she had lived and worked at the same places for several months and her acquaintances knew this. She also indicated that she had been contacted about being a witness in the case only the day before. Boston told the court that he had looked for Brown for three weeks, but he knew since November 2004 that the case was going to trial and Brown had been on all of his witness lists. He also never previously indicated to the court any problems in securing Brown's presence. Given Boston's lack of diligence in procuring witnesses, it cannot be said that the district court's reducing his time for closing argument by only 14 minutes, or approximately 25 percent, was an abuse of discretion. *See Bernes*, 602 F.2d at

8

722; *Hodge v. United States*, 271 F.2d 52 (5th Cir. 1959)[2] (party's request for 40 minutes for closing argument and district court's allowance of 30 minutes was not an abuse of discretion).

Furthermore, Boston was not prevented, during his closing argument, from making all legal arguments supported by the facts. He addressed the conspiracy count and brought out areas of doubt based on the evidence produced at trial and the witnesses' credibility. Neither below nor on appeal does he point to any specific legal arguments that he was not allowed to make. *Hall,* 77 F.3d at 400; *see also United States v. Gray*, 105 F.3d 956, 965 (5th Cir. 1997) (where appellant pointed to no precise information that he was unable to provide the jury because of the court's limitation on closing argument, he failed to show that the district court abused its discretion) (persuasive authority).

The record as a whole also does not demonstrate that the district court was partial or unconstitutionally deprived Boston of a fair trial. The record demonstrates that the district court was generally patient with Boston's failure to produce witnesses and made other arrangements when necessary. The district court offered to issue warrants for absent witnesses under subpoena, tried to find a

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

flight for Smith, allowed both parties the opportunity to contact him, allowed the trial to go on longer than anticipated based on Boston's problems in securing Smith, and allowed Boston to present the testimony of unexpected witnesses. Any comments by the district court expressing displeasure, impatience or annoyance with Boston were made outside the presence of the jury, and thus, did not prejudice him. In sum, we hold that the district court did not abuse its discretion in limiting Boston's time for closing argument, did not demonstrate bias towards Boston, and did not otherwise deprive him of a fair trial. Accordingly, we affirm Boston's conviction.

**AFFIRMED.**