[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13942

_____

D.C. Docket No. 1:16-cr-20787-RNS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

AMNON AMI LEVI,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 28, 2019)

Before MARCUS, and DUBINA, Circuit Judges and GOLDBERG,* Judge.

PER CURIAM:

_____

* Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by designation.

This is a child pornography case.  Appellant Amnon Ami Levi ("Levi") appeals his one-count conviction for possession of child pornography involving a prepubescent minor, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). Additionally, Levi appeals his 168-month prison sentence, to be followed by a 15-year term of supervised release, and a $100 special assessment.  Levi also appeals the district court's order directing him to pay a total of $8,700 in restitution to the victims of his crime.  After reviewing the record, reading the parties' briefs, and having the benefit of oral argument, we affirm Levi's conviction and sentence and the district court's order awarding restitution.

## I.    BACKGROUND FACTS

The district court conducted a two-day jury trial.  At the trial, Special FBI Agent Elliot Heath Graves ("Agent Graves") testified that he accessed a peer-to-peer file sharing network called eMule to search for subscribers who had files available for sharing that were known to contain child pornography.  Agent Graves explained in his testimony that he was familiar with certain child pornography files from prior experience and that he searched for those files.  Over a six-month period, Agent Graves downloaded several child pornography files from the same email user.  He identified the specific internet address of the user, and Comcast business records listed Levi as the subscriber.  Agent Graves also conducted

2

surveillance of Levi's home and observed a vehicle registered to Levi at the residence. Based on this information, Agent Graves obtained a search warrant for Levi's home, where he uncovered several folders on an external hard drive containing child pornography.

Agent Graves testified that at the time of the execution of the search warrant, he interviewed Levi, and Levi admitted to downloading and viewing the child pornography. (R. Doc. 103: 159-216.) Agent Graves did not place Levi under arrest, so he was not in custody at the time of the interview. The district court allowed the government to introduce the recorded interview and corresponding transcript into evidence. (R. Doc. 64, Gov't Exh. 6.) In that recording, Agent Graves told Levi that child pornography had been traced to Levi's house. Levi replied, "you know um, I am all on my own, so …" and "sometimes when you in situation when you feel like yea, so you go to pornography." (*Id.* at 6:16.) Levi said he "was not looking into a specific age. Just you know whatever, age was not uh, a parameter for me," but he admitted, "they were young. Uh, eight, six." (*Id.*) Levi explained that he used eMule to search for images using terms like "eight" and "young." (*Id.* at 18.) When Agent Graves asked, "why would you look at that stuff," Levi responded, "what would a guy stay on a computer see something pornography for? To relax himself." (*Id.* at 23.) Levi told Agent Graves that his computer had been infected with a virus, but he transferred all his files, including

3

the pornography to an external hard drive. He explained, "I didn't think that I'm doing any crime or anything" and that he was "just watching." (*Id.* at 27-28.)

Agent Graves reviewed all of Levi's electronic devices and discovered that the primary stash of child pornography was on the external hard drive that Levi indicated. Although some of the materials appeared to involve adults, Agent Graves estimated that 90% of the materials involved children. The majority of the children in the images were between five and twelve years old. Federal agents recovered over 7,500 separate images and over 150 videos of child pornography from Levi's external hard drive. There were over forty hours of child pornographic video, ranging in duration from very short periods to over three hours.

FBI Forensic Examiner Jeff Etter ("Etter") testified, without objection, as an expert witness in computer forensics based on his extensive training and experience examining digital media. (R. Doc. 104: 36‗64.) He described Levi's external hard drive as "very organized," containing a series of folders and subfolders. A folder entitled "MioNet" contained 147 child pornography videos, and a folder named "New Folder," which contained additional subfolders and sub-subfolders, all of which contained child pornography images and videos.

At trial, the parties stipulated in writing that Levi's electronic devices were produced using materials that had been shipped in interstate or foreign commerce

and contained visual depictions of minors, some prepubescent, engaged in sexually explicit conduct.  The district court denied defense motions for a judgment of acquittal after the government rested, and at the close of the entire case.  Levi did not present any evidence or call any witnesses.  After deliberating, the jury returned a verdict of guilty as to the single possession of child pornography count.

Although Levi is an American citizen, his primary language is Hebrew, not English.  Levi did not use an interpreter during the trial and declined the district court's inquiry about the need for an interpreter.  The district court asked whether he understood what was happening, and Levi responded, "in most cases I know everything, but sometimes you know they use words that I'm not familiar, but in general, yes, I understand most of the stuff."  (R. Doc. 103: 176.)  Additionally, Levi's counsel confirmed that he did not think use of an interpreter was necessary.

Subsequently, the district court conducted a sentencing hearing.  The Presentence Investigation Report ("PSI") assigned Levi a base offense level of 18 pursuant to USSG § 2G2.2(a)(1).  The PSI added two-level enhancements to Levi's calculated base offense level because the material involved a prepubescent minor under USSG § 2G2.2(b)(2), the offense involved distribution under USSG § 2G2.2(b)(3)(F), and the offense involved a computer under USSG § 2G2.2(b)(6) (R. PSI at ¶¶ 49, 50, and 52.)  The PSI also added a four-level enhancement because the offense involved sadistic or masochistic conduct under USSG §

5

2G2.2(b)(4), and the PSI added a five-level enhancement because the offense involved over 600 images under USSG § 2G2.2(b)(7)(D) (R. PSI at ¶¶ 51, 53.) The total offense level was 33, and with no criminal history, the sentencing guideline range was 135-168 months.

Neither party objected to the PSI, and the government recommended a sentence at the low end of the guidelines. The defense asked for a sentence closer to seven years emphasizing Levi's difficult childhood, including being abandoned as a baby to be raised by family members and being sexually abused by a neighbor at the age of six or seven, his history of alcohol abuse, his service in the Israeli Army, his successful employment in business and as a flight instructor, and his candor with law enforcement. After considering the statutory factors set forth in 18 U.S.C. § 3553(a), the district court highlighted the very serious offense and the need for a significant sentence to deter others and sentenced Levi to 168 months, the high end of the guideline range.

The district court also conducted a restitution hearing. Relying on the Supreme Court case of *Paroline v. United States*, 572 U.S. 434, 134 S. Ct. 1710 (2014) (deciding whether 18 U.S.C. § 2259 limits restitution to those losses proximately caused by the defendant's offense conduct), the district court awarded a total of $8,700 in restitution to nine victims. Levi then perfected this appeal.

## II.    ISSUES

(1) Whether the district court plainly erred in admitting Levi's statements to law enforcement officers before his arrest.

(2) Whether the district court plainly erred in allowing the forensic examiner to testify about his knowledge of computer viruses.

(3) Whether sufficient evidence established Levi's knowing possession of child pornography.

(4) Whether Levi's guideline sentence was reasonable.

(5) Whether the district court clearly erred in imposing restitution to the victims.

## III.    STANDARDS OF REVIEW

We review for plain error the admission of Levi's pre-arrest statements to law enforcement officers because a suppression claim that is fully articulated for the first time on appeal is reviewed for plain error. *United States v. Young*, 350 F.3d 1302, 1305 (11th Cir. 2003) (citing *United States v. Sentovich*, 677 F.2d 834, 837 (11th Cir. 1982)).

This court also reviews for plain error Levi's claim that the forensic examiner testified outside his area of expertise because the defense never raised that objection during trial. *United States v. Johnson*, 694 F.3d 1192, 1195 (11th Cir. 2012) (stating plain error requirements).

7

We review de novo claims challenging the sufficiency of the evidence. *See, e.g., United States v. Calhoon*, 97 F.3d 518, 523 (11th Cir. 1996). The evidence is viewed "in the light most favorable to the government" and "all reasonable inferences and credibility choices [are] made in the government's favor." *Id.*

This court reviews both the procedural and substantive reasonableness of a sentence under a deferential abuse of discretion standard. *See United States v. Overstreet*, 713 F.3d 627, 636 (11th Cir. 2013).

This court reviews de novo the legality of a restitution order in a child pornography case, while reviewing the underlying factual findings for clear error. *United States v. McDaniel*, 631 F.3d 1204, 1207 (11th Cir. 2011). "[P]roximate cause is a factual finding we review for clear error." *Id.* (quoting *United States v. Robertson*, 493 F.3d 1322, 1334 (11th Cir. 2007)).

## IV.    DISCUSSION

### A. <u>Statements to law enforcement</u>

Levi argues on appeal that his conviction should be reversed because his statements were admitted in violation of the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). He also contends his statements were involuntarily based on an alleged "language barrier." The problem Levi faces is that he never filed a motion to suppress the statements, and he raised no objection during the trial when the prosecutor sought the admission of his

8

statements.  Consequently, we can only reverse his conviction on this issue if there is plain error.  There is none.

The Supreme Court has held that the Fifth Amendment's prohibition against compelled self-incrimination requires that a person taken into custody must be advised of his or her right to remain silent and his or her right to counsel prior to an interrogation.  *Miranda*, 384 U.S. at 478-79, 86 S. Ct. at 1630.  The Supreme Court defines "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Id.* at 444, 86 S. Ct. at 1612.  Levi argues that a reasonable person would have believed he was in custody based on the circumstances surrounding his interview with the officers.

First, Levi claims that the officers created a coercive environment by showing up at his apartment at an early hour – Levi was allegedly still in his pajamas when they arrived.  Second, Levi argues that the number of officers who arrived at his apartment is an additional factor that would have made a reasonable person believe he was in custody.  Additionally, Levi claims that when the officers took Levi's cellphone (arguably as part of their search of his electronic items), he felt that he was not free to leave his apartment.  Relatedly, it is unclear whether the officers also took his wallet during their search, but Levi claims they did, and this also furthers his claim that he did not feel free to leave.  Levi argues that these

9

factors in totality created an objectively coercive and intimidating environment. Therefore, he contends that his statements to the officers were obtained in violation of the Fifth Amendment.

The factors that Levi focuses on are largely a part of police interviews, generally, and police interviews are necessarily coercive in themselves; "a non-custodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that . . . the questioning took place in a 'coercive environment.'" *California v. Beheler*, 463 U. S. 1121, 1124, 103 S. Ct. 3517, 3519 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 714 (1977)). Moreover, custody is "much 'less likely . . . when the interrogation occurs in familiar or at least neutral surroundings.'" *United States v. Luna-Encinas,* 603 F.3d 876, 882 (11th Cir. 2010) (quoting *United States v. Brown*, 441 F.3d 1330, 1348 (11th Cir. 2006)).

The record demonstrates that Levi was interviewed in the parking lot outside his apartment. He was free to retreat to his apartment or go anywhere else, and the officers did nothing to compel him to remain. Moreover, there is no evidence in the record that Levi was handcuffed or physically secured during the interview, that any law enforcement officer brandished his weapon, that Levi was forced to accompany Special Agent Graves, that he was prohibited from returning to house, or that the encounter was confrontational in any way. In *United States v.*

10

*Thompson*, 422 F.3d 1285 (11th Cir. 2005), we noted that, "[s]ufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." *Id.* at 1295-96 (quoting *United States v. Mendoza-Cecelia*, 963 F.2d 1467, 1475 (11th Cir. 1992)).  None of those factors were present here.  Importantly, on more than one occasion during the interview, Agent Graves advised Levi he was not under arrest and that he was free to move around.

Based on our review of all of the relevant factors in this record, we conclude that a reasonable person would not have felt that his freedom was restrained to a degree associated with a formal arrest.  Accordingly, we conclude Levi's statements were not custodial, and the district court did not plainly err in admitting them.

Levi also argues that his statements were not voluntary because of an alleged "language barrier" that led him to believe that Agent Graves's questions were about adult pornography.  However, Levi admitted to the agents that he searched for pornography involving children as young as six and eight years old.  The record shows that Levi speaks good English, is a United States citizen, has resided in this country for more than a decade, and has worked as a flight instructor in the United States.  "Although language barriers may in some instances impair an individual's

11

ability to waive his rights in a knowing manner," the record shows that Levi specifically denied having any problem with the English language. *See United States v. Boon San Chong*, 829 F.2d 1572, 1574‑75 (11th Cir. 1987). Moreover, during trial, Levi declined the option of using a Hebrew interpreter, and he and his counsel assured the court that he adequately understood English, which was reflected at sentencing when he allocuted in English without difficulty.

In sum, based on the totality of the circumstances, we conclude Levi was not in custody and his statements were voluntary. Thus, the district court did not plainly err by admitting them into evidence without objection.

## B. <u>Testimony of computer forensic expert</u>

Levi next contends that the district court erred by allowing forensic examiner Jeffrey Etter to testify regarding matters outside his area of expertise, particularly testimony about computer viruses. The first problem for Levi is that the defense never raised this objection during trial, and Levi cannot show that the district court plainly erred by allowing Etter to testify about his knowledge of computer viruses. Not only did the district court not plainly err, it did not err at all. As the defense elicited, Etter is qualified to perform computer virus analysis and was last trained in that specific area three years prior to his testimony. Based on Etter's undisputed computer forensic expertise and his virus training, we conclude the district court had no reason to limit the scope of Etter's testimony in that

12

regard.  Importantly, the defense even attempted to use Etter's expertise to its advantage.  Accordingly, there is no merit to any of the arguments Levi makes concerning this issue.

C. **Sufficiency of the evidence**

Based on our review of the record, we conclude Levi's claim that the evidence was insufficient to convict him has no merit. The only element of the offense that he challenges is his knowledge of the elicit images.  In reviewing the sufficiency of the evidence to support a jury verdict, the court must "review the evidence in the light most favorable to the government and draw all reasonable factual inferences in favor of the jury's verdict."  *United States v. Smith*, 459 F.3d 1276, 1286 (11th Cir. 2006) (quoting *United States v. Dulcio*, 441 F.3d 1269, 1276 (11th Cir. 2006)).  The inquiry becomes whether "a reasonable fact-finder could have determined that the evidence proved the defendant's guilt beyond a reasonable doubt."  *Id.*  "In judging the sufficiency of the evidence, the standard applied is the same whether the evidence is direct or circumstantial."  *United States v. Utter*, 97 F.3d 509, 512 (11th Cir. 1996).

In our view, the evidence at trial overwhelmingly established that Levi knowingly possessed child pornography.  Someone using Levi's specific internet address provided child pornography files for sharing over the eMule peer-to-peer network.  Levi lived alone, and agents found evidence of child pornography on his

13

computer and two external hard drives.  One external hard drive contained an eMule installer and numerous child pornography images and videos that were stored in an organized system of folders and subfolders, some with labels reflecting the age of the child victims or the nature of the sexual conduct.  The second external hard drive contained a list of sexually explicit websites indicative of child pornography.  Levi's computer had recently been used on several occasions to access child pornography files from the external hard drive.

All the above evidence reflects that a person in Levi's home took specific actions related to child pornography, undercutting Levi's defense that a virus was responsible for the illegal files.  The totality of this evidence, viewed in the light most favorable to the government, supported the jury's reasonable conclusion that Levi knowingly possessed child pornography.

## D. <u>Reasonableness of sentence</u>

In our view, Levi's 168-month sentence was reasonable.  It was within the guideline range and well under the statutory maximum.  The district court reasonably balanced the § 3553(a) factors, taking into account both mitigating circumstances, like Levi's childhood difficulties and military service, and aggravating factors, like the large number of violent images he saved, his targeted searches for young children, and his apparent lack of remorse.  Accordingly, we affirm his sentence.

### E.  Restitution Award

Finally, Levi argues that the district court's restitution award was improper because the government failed to meet its burden of showing proximate causation between Levi's conviction and the harm suffered by the victims.  Levi does not challenge the amount of the restitution order.  Further, he argues that the government failed to satisfy its burden as it only presented generalized statements of hardship that failed to connect Levi's action to the victims' harm.

Levi's position stands in direct contradiction to the Supreme Court's holding in *Paroline v. United* States, where the Court held that restitution is appropriate when causation is established "where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images."  *Id.* at 458, 134 S. Ct. at 1727.  The Court stated that restitution is proper "only to the extent the defendant's offense proximately caused a victim's losses."  *Id.* at 448, 134 S. Ct. at 1722.  "The required restitution [is] a reasonable and circumscribed award imposed in recognition of the indisputable role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role."  *Id.* at 459, 134 S. Ct. at 1727.  Based on our review of the record, we conclude there was no clear error in the district court's finding of proximate cause based on the large number of videos and files depicting child pornography.  *See id.* at 460, 134 S. Ct.

15

at 1728 (discussing factors for consideration in determining restitution).

Accordingly, we affirm the district court's order awarding restitution.

## V.    CONCLUSION

For the foregoing reasons, we affirm Levi's conviction, his 168-month

Sentence, and the district court's restitution order.

AFFIRMED.